IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FILED by _____ D.C.

APR 04 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA – MIAMI

ANGEL BALBUENA
  Petitioner
    v.
UNITED STATES OF AMERICA
  Respondent

**11-21168-Civ-COOKE/WHITE**

Case No: 07-20487-cr-MGC

Appeal No: 08-16120

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT 28 U.S.C. SECTION § 2255.

**COMES NOW**, petitioner Angel Balbuena, proceeding Pro-se in this matter, respectfully prays this Honorable Court pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his conviction and sentence in the above referenced case, wherein defense counsel deprive petitioner his Sixth Amendment right to effective representation, and the court's factual finding pursuant to U.S.S.G. § 2D1.1 and 21 U.S.C. 841 (b)(1)(B); used in enhancing petitioner to 4 levels, and consecutive sentence was erroneous given the nature of the underlying prior conviction and drug quantity lused as enhancements.

### STATEMENT OF THE CASE

A.  Plea Hearing

Petitioner was indicted for: (1) attempting to possess 13 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1); (2) posse-

ssion of more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841 (a)(1), (B)(1)(B), and 846 (Count 2); and (3) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(C), and 846 (Count 3).

IN June 2007, Petitioner was released on bond.  After petitioner failed to appear for a plea hearing in October 2007, the district court issued a bench warrant for his arrest.  In March 2008, petitioner was located at the Miami-Dade County Jail and released to the U.S. Marshals Service.

At the reschedule plea hearing, the district court informed petitioner of the statutory maximum imprisonment term on each count, but did not advise him of any mandatory minimum penalties. The district court also advised petitioner that any imprisonment would be followed by "terms of supervised release" and that each count included a special assessment.  Petitioner said that he understood the charges against him and the rights that he was giving up by pleading guilty and that no one was forcing him to pled guilty. But he was ill advice and induce by his attorney to be guilty plea.

The government proffered that the evidence at trial would show that a Drug Enforcement Administration ("DEA") agent, Jalisa Monzon and separate confidencial informant ("CI") placed several recorded phone calls to petitioner.  In these calls, petitioner told the CI that he had gathered enough money to purchase over 10 kilograms of

- 2 -

cocaine and arranged a transaction.  Petitioner met the CI and
undercover DEA Agent Monzon in a parking lot.  Petitioner told the
CI that he had brought $100,00 with him and the rest of the money
was at home.  Petitioner asked to see the cocaine.  The DEA agent
showed petitioner a large duffel bag that contained 13 brick-shaped
objects wrapped in duct tape that were intended to simulate kilo-
grams of cocaine.  Petitioner was then arrested.

At the plea hearing, petitioner's counsel disagreed with the
proffered drug quantity.  Petitioner's counsel stated that the a-
gents tol petitioner that they had 10 kilograms of cocaine to sell,
but petitioner negotiated to purchase only three kilograms.  The
government responded that a factual proffer of less than five ki-
lograms would not comply with the indictment.  Petitioner's coun-
sel conferred with petitioner and the interpreter and then said
that petitioner was prepared to proceed with his guilty plea.  Pe-
titioner agreed with the factual proffer and pled guilty to Counts
1,2 and 3.  The district court accepted petitioner's plea.

## B.   PRESENTENCE INVESTIGATION REPORT

The Presentence Investigation Report ("PSI") reproduced a
written statement from petitioner.  In the statement, petitioner
said that a man named Carlos Luna was going to purchase 10 of the
13 kilograms of cocaine.  Petitioner stated that he told the CI and
the DEA agent at the time of the transaction that Luna had the rest

- 3 -

of the money for the purchase at petitioner's house.

The PSi assigned a base offense level of 32 based on a drug quantity of 13.785 kilograms of cocaine and 776.9 grams of marijuana, pursuant to U.S.S.G. § 2D1.1(c)(4). The PSI recommended a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because petitioner failed to appear for the initial plea hearing. The PSI declined to recommend a reduction for acceptance of responsibility, in part because of petitioner's conduct resulting in the obstruction of justice enhancement. Based on petitioner's total offense of 34 and criminal history category of II, the PSI calculated and advisory guidelines range of 168 to 210 months' imprisonment. The PSI outline the following statutory penalties: (1) for Count 1, a minimum inprisonment term of 10 years and a maximum imprisonment term of life under 21 U.S.C. § 841(b)(1)(A); (2) for Count 2, a minimum imprisonment term of five years and a maximum inprisonment term of 40 years under 21 U.S.C. § 841 (b)(1)(B); and (3) for Count 3, no minimum imprisonment term and a maximum inprisonment term of 5 years under 21 U.S.C. § 841(b)(1)(D). The PSI also outlined the mandatory supervised release terms for each count. Petitioner objected to the PSI's drug quantity and denial of an acceptance of responsability reduction.

C  Motion to withdraw Guilty Plea

After the PSI was issued, the district court allowed petitio-

ner's counsel to withdraw and appointed petitioner new counsel.
Petitioner, through his new counsel, filed a motion to withdraw his
guilty plea.  Petitioner asserted, <u>inter alia</u>, that he did not re-
ceive close assi stance of counsel because the recorded conversa-
tions between petitioner and the CI were not translated from Spa-
nish to English or transcribed and his prior counsel was not fluent
in Spanish.  Petitioner argued that his prior counsel could have
provided better assistance if the recordings had bee translated be-
cause petitioner appeared to say he only had money for three kilo-
grams of cocaine in one of the last conversations.  Petitioner also
argued that his guilty plea to Count 1 was not knowing and volunta-
ry because he intended to purchase only three kilograms of cocaine.

    At a hearing on petitioner's motion to withdraw his guilty
plea, petitioner's counsel argued that petitioner brought enough
money to the meeting with the CI and DEA Agent Monzon to purchase
only three kilograms of cocaine.  When the district court questio-
ned petitioner about his agreement with the government's factual
proffer at the plea colloquy, petitioner's counsel responded,
"Judge, that is what it is."  With regard to the recorded conversa-
tions betwee petitioner and the CI. petitioner's counsel noted that
the Spanish word for "three" and "thirtee" sound similar.  The
government explained that the record conversations were not trans-
cribed into English because the "case was tracking towards a guilty
plea".

The district court orally denied petitioner's motion to withdraw his guilty plea because petitioner (1) was in the best position to advise his counsel about the content of the recorded phone conversations, (2) had time to confer with counsel and the interpreter during the plea hearing whenever he had questions, and (3) said that he agree with the factual proffer, that he was pleading guilty because it was in his best interest, and that he was satisfied with counsel's representation.

## D. Sentencing

At sentencing, the government presented testimony from DEA Agent Monzon, who was the main agent on petitioner's case and was the undercover agent present at the transaction. Monzon testified that she is fluent in Spanish and that she listened to each of the phone calls between petitioner and CI, which were conducted in Spanish. Monzon also testified that she transcribed the recordings herself but that there was no official transcription of them. Monzon testified that the drug transaction was negotiated over the course of several phone conversations and that drug quantity discussed ranged from 10 to 15 kilograms of cocaine. Monzon further testified that, during a recorded conversation with the CI on the date of his arrest, petitioner said, "I have the money for 13", and that he was referring to the kilograms of cocaine he had arranged to purchase. Monzon conceded that petitioner did not speak "proper Castillian Spanish" but testified that she was certain that

petitioner had asked for 13 kilograms of cocaine, Monzon acknow-
ledged that petitioner said during one conversation that he had
money only for three kilograms but testified the the CI, at the DEA
direction, told petitioner that he would not sell him only three
kilograms.

Monzon also testified that the arrangement was for petitioner to
bring all of the money for the transaction to the meeting place.
When petitioner arrived, he told Monzon and the CI that he had
brought $100,000 with him and that they would follow him to peti-
tioner's residence to get the rest of the money for the transac-
tion from Carlos Luna.  Agents later counted the money that peti-
tioner brought with him and discovered that it was only approxima-
tely $54,000.

Petitioner testified that, on the day of the arranged tran-
saction, he told the CI that he had the money for three kilograms
and that he eother would buy three kilograms or he would leave.
Petitioner denied that he intended to purchase cocaine for Luna,
but conceded that he said so during debriefing.  Petitioner testi-
fied that he had lied in an attempt to lessen his sentence.

The district court found that petitioner's version of events
was not credible.  The district court found that the transcripts
indicated that petitioner requested between 10 to 15 kilograms of
coca ine at various times.  The district court noted that the CI

- 7 -

told petitioner consistently that he would not sell a lesser amount, but petitioner continued with the purchase nevertheless. Based on the recorded telephone conversations and Agent Monzon's testimony, the district court found that petitioner intended to take his three kilograms of cocaine and then go elsewhere to get additional money to purchase the other 10 kilograms. Thus, the district court found that the government met its burden of proving the drug quantity by a preponderance of the evidence.

With regard to the guidelines calculations, petitioner argued that it was impermissible double-counting to rely on his failure to appear for the initial plea hearing in applying the obstruction of justice enhancement and denying the acceptance of responsability reduction. The district court overruled his objection and adopted the advisory guidelines range of 168 to 210 months' imprisonment. The district court sentenced petitioner to 170 months' imprisonment each on Counts 1 and 2 and 60 months' imprisonment ob Count 3, all to run concurrently, and five years of supervised release. Petitioner Appealed.

## II. DISCUSSION

### A. Withdrawal of Guilty Plea

Petitioner argues that the district court erred in denying his motion to withdraw his guilty plea for two reasons.

First, petitioner argues that the district court failed to advise him of the statutory mandatory minimum penalties that he faced at the plea hearing.  Because petitioner did not raise any objections in the district court regarding the adequacy of the plea colloquy, we review this issue only for plain error. <u>United States v. Rodri</u><u>guez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005).

## PRO-SE PROCEDING

Movant/Petitioner, states that he is not an attorney and does not have any legal or professional background pertaining to drafting or filing a complaint. The petitioner prays that this Honorable Court would literally construe his complaint in light of the Supreme Court ruling in <u>Haine v. Kerner</u>,404 U.S. 519,30 L.Ed.2d.652(1972);<u>Cruz v. Beto</u>,405 U.S.319(1972). As squarely stated by the U.S. Court of Appeals for the Second Circuit in <u>Soto v. Walker</u>,441 F.3d.169(2d Cir. 1995),"pro-se motions must be literally construed and interpreted to raise the strongest arguments that they suggest."

## STATEMENT OF ISSUES

1-WHETHER TRIAL COUNSEL FAILURE TO ENSURE THAT THE DEFENDANT UNDER-STOOD THE NATURE AND CONSEQUENCES OF THE PLEA CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL; WHERE THE SAME DEFENSE COUNSEL WHEN HE QUIT THE CASE, ADMITED THAT WAS HIS ERROR AND INEFICIENCE WHICH CONDUCTED TO THTA MOVANT ACCEPT THE PLEA.

2-WHETHER TRIAL COUNSEL FAILURE TO OBJECT THE APPLICATION OF TWO(2) LEVELS FOR OBSTRUCTION OF JUSTICE PURSUANT TO U.S.S.G.§3C1.1 WHEN WAS APPLIED OF MANNER CONSECUTIVE; IF PRIOR CONFERENCE TO PLEA HEA-

- 9 -

RING THE DISTRICT COURT AND U.S. ATTORNEY HAD PROMISED THAT THESE LE-
VELS WILL BE APPLIED OF MANNER CONCURRENT.

3-WHETHER TRIAL COUNSEL'S FAILURE TO FILE OBJECTIONS TO THE PSR,RE-
GARDING TO CRIMINAL HISTORY CATEGORY AND IS INCOSISTENT WHEN FILE
OBJECTIONS TO DROUG QUANTITY; IF HE IN THE SAME ADVICE AND PERMIT THAT
MOVANT/PETITIONER BE PLEA GUILTY TO A DROUG QUANTITY THAT MOVANT
NEVER ADMITS AND AFTER THE OBJECT TO THE PSR.

4-WHETHER TRIAL COUNSEL FAILURE TO PROVIDE ADVICE AS TO THE AVAILA-
BILITY OF AN AFFIRMATIVE DEFENSE OF ENTRAPMENT CONSTITUTED INEFFECTI-
VE ASSISTANCE OF COUNSEL.

## LEGAL STANDARDS APPLICABLE TO CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution entitles a
criminal defendant to reasonable assistance of counsel,Strickland v.
Washington,466 U.S.668,686(1984). "The right to counsel is a funda-
mental right of criminal defendant; it assures the fairness, and thus
the legitimacy of our adversary process", Kilmmelman v. Morrison,477
U.S. 365,373(1986).

And to ensure that defense counsel upjolds the adversarial process
established by the 6th Amendment, the right to counsel is defined
as the right to the effective assistance of counsel, Strickland at
686 (citing McMann v. Richard,397 U.S. 759, 771(1970). Thus, when a
criminal defendant does not receive the effective assistance of coun-
sel at trial or sentencing as is evident in the instant case, the
adversarial process is said to have been compromised, requiring the

reversal of conviction or correction of sentence.

As an acceptable practice, the benchmark for judging a claim of in-
effectiveness is "whether counsel's conduct so undermined the proper
functioning of the adversarial process that the [proceeding] cannot
be relied as having produced just result". **Strickland** at 686.However,
even a single error can rise to level of ineffective assistance of
counsel if:(1)It falls below the standard of reasonable performance
under prevailing professional norms; and (2)There is reasonable pro-
bability "that but for counsel's unprofessional errors, the result
of the proceeding would have been different." _id_ at 687-88. On a
scale of evidentiary burdens, a reasonable probability is shown by
less than a propoderance of the evidence and "sufficient to under-
mine confidence in the outcome." _id_. at 693-694. As the evidence will
show herein, counsel was not prepared to effectively defend the pe-
titioner, or at least make a minimum effort to understand the under-
lying prior conviction which the PSR based its suggestion for a 3
points enhancement, adopted by the sentencing court.
Rather petitioner contends that he was improperly sentenced and that
counsel was grossly deficient.

Section 2255 provides that "prisioners" may move for relief "on the
ground that the sentence was imposed in violation of the Constitution
or laws of the United States, or that the court was without juris-
diction to impose such sentence, or that the sentence was in excess
of the maximum authorized by law, or is otherwise subject to colla-
terall attack."

One of the most significant differences between a direct appeal and a

§§2255 motion is that direct appeals are decided based on the dis-
trict court record as it exists as of the time the notice of appeal
is filed. In constrast, §§2255 motions offer defendants the oppor-
tunity to present the court with new eveidence. While issues which
may be rised in a §§2255 motion are not limited by the record as it
exists at the time the motion is filed, not all issues may be raised
in a §§2255 motion.

A petitioner cannot litigate under Section 2255 claims that he could
have, but did not, raise on direct appeal, unless the petitioner can
show either: (1)cause and prejudice for the failure to raise the
claim; or (2)that the petitioner is actually innocent of the crime
which he was convicted. <u>**Boysley v. United States**</u>,523 U.S.614,622-23
(1998). A petitioner can show that there was "cause" for his failure
to raise a claim by establishing that trial or appellate counsel
provided ineffective assiatnce. To prove that counsel's assistance
was ineffective, the petitioner must meet the two-prong test arti-
culed by the Supreme Court in <u>**Strickland v. Washington**</u>,466 U.S.668,
694(1984), which requires showing that appellate counsel's conduct
was (1)objectively unreasonable, and (2)prejudicial to the petitioner
See <u>**Mayo v. Henderson**</u>,13 F.3d. 528, 533 (2nd Cir. 2004)
(applying <u>**Strickland**</u> standard to claim of ineffective assistance of
appellate counsel). If a petitioner argues that appellate counsel's
assistance was ineffective because counsel decided not to raise a
claim, the petitioner must show that appellate counsel "omitted sig-
nificant and obvious issues while pursuing issues that were clearly
and significantly weaker." <u>**Id.**</u>

Therefore, if an issue could have been raised on direct appeal, but

-12-

was not, a district court will not consider the issue in a §§2255 proceeding unless the defendant can demonstrate "cause"(such as in-effective assistance of counsel)for not raising the issue earlier and "prejudice"(that is, that the error likely made a difference in the outcome). Conversely, if and issue was raised and decided on appeal, a defendant is procedurally barred from raising it again in a §§2255 motion, absent extraordinary circumstances, such as an intervinining change in the law or newly discovered evidence. See U.S. v. Pipitone, 67 F.3d. 34, 38 (2nd Cir. 1995)    (A party who fails to raise an issue on direct appeal and subsequently endeavours to litigate the issue via a §§2255 petition must show that there was a cause for fai-ling to raise the issue, and prejudice resulting therefrom")(internal quotattion marks and citations omitted).

ARGUMENT ONE

WHETHER TRIAL COUNSEL FAILURE TO ENSURE THAT THE DEFENDANT UNDERSTOOD THE NATURE AND CONSEQUENCES OF THE PLEA CONSTITUTED INEFFECTIVE ASSIS-TANCE OF COUNSEL; WHERE THE SAME DEFENSE COUNSEL WHEN HE QUIT THE CASE, ADMITED THAT WAS HIS ERROR AND INEFICIENCE WHICH CONDUCTED TO THAT MOVANT ACCETP THE PLEA.

Defendants in a criminal case have the constitutional right to receive "counsel's informed opinion as to what pleas shloud be entered." Boria v. Keane,99 F.3d. 492, 497 (2nd Cir. 1996)     , interpreting the seminal ineffective-assistance-of counsel case of Strickland v. Washington,466 U.S. 668, 104 S.Ct.2052(1984),holds that where counsel does not provide such information, advice and professional opinion to the defendant, cousel has performed inefecctively. Boria recognizes the realites of counsel's pivotal plea-bargaining role in

today's criminal justice system grounded in the Sentencing Guidelines. Counsel who does not inform and advise the client in this area is not performing effectively, and a guilty plea entered without the reasonably competent advise of counsel is not constitutionally valid.

The Due Process Clause of the Fourteenth Amendment requires that a guilty ple be knowingly and voluntarily entered. E.g., Boykin v. Alabama,395 U.S. 238,242-43,89 S.Ct. 1709,23 U.Ed.2d. 274 (1969). A plea is made knowingly when it is entered "'with [an]understanding of the nature of the charge and the consequences of the plea." Santobello v. New York,404 U.S. 257, 261 n.1, 92 S.Ct. 495, 30 U.Ed.2d 427(1971) (quoting Fed.R.Crim.P.11).

In the context of a defense counsel's advice surrounding a plea offer, "[a]lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation: Purdy v. United States,208 F.3d. 41, 45 (2nd Cir. 2000) (internal quotation marks omitted)(quoting Model Rules of Professional Conduct Rule 1.4(b)(1995))"The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a crinimal case...[and]counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." Boria v. Keane,99 F.3d. 492, 496-97 (2nd Cir. 1996) (internal quotation marks omitted)(quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases (1988)),cert. denied, Keane v. Boria,521 U.S. 1118,117 S.Ct. 2508, 138 U.Ed.2d. 1012(1997). "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." U,s. v. Gordon,156 F.3d. 376, 380 (2nd Cir. 1998).

(per curiam)(citation and internal quotation marks omitted). Where as here, "defendant's specific claim is that counsel has misled him as to the possible sentence wchich might result from a plea of guilty...the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." Ventura v. Meachum,957 F.2d. 1048, 1058 (2nd Cir. 1992)  (citing cases)(internal quotation marks omitted).

The Fundamental problem with the argument is the considerable body of caselaw which holds that there exists a strong presumption in favor of the allocution which is designed to insure that the plea was knowing and voluntary. See, e.g.,Garcia-Santos v. United States,273 F.3d. 506, 508 (2nd Cir. 2001);United States v. Hernandez,242 (2d Cir2001) (a "district court [is] entitled to rely upon the defendat's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney... and had been made no promises except those contained in the plea agreement")United States v. Juncal,245 F.3d.166, 171(2d Cir2001)(testimony at allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.")(citations omitted). Thus, federal courts have held that where a defendant affirms during a plea hearing that he or she understands that the court may impose a longer sentence despite any assurances the defendat may have received, the defendant may not collaterally challenge the voluntariness of

the plea on those grounds. See,e.g. Brama v. United States,2010 WL 1253644, at 3 (S.D.N.Y. Mar. 16,2010). That said, I still believe that the argument is worth making because the unsual circumstances surrounding the plea provide a substantial reason to find that the plea was neither voluntary nor knowing.

The Petitioner, asserts that the plea(s) enetered in all the refrenced are invalid because (1)they violate the due process clause of the 14th amendment, (2)there was no effective waiver of the constitutional rights as required by Boykin, (3)he enetered the plea(s)without ef-fective assistance of counsel, (4)there was no actual innocence to the charges for which he was convicted.

Beacuse the defendant waives many constitutional rights by pleading guilty, the plea must be entered coluntarily, knowingly and inte-lligently. See Boykin v. Alabam,395 U.S. 238 (1969);Parke v. Raley, 506 U.S. 20 (1992); United States v. Chubbuck,252 F.3d. 1300 (11th Cir.). To be valid, the guilty plea (1)must be free from coercion,(2) the defendant must know and understand the nature of the charge,(3) the defendat must know and understand the consequences of his guilty plea. See United Staes v. Jones,143 F. 3d. 1417 (11th Cir. 1998).

The fourteenth amendment due process clause requires that a plea of guilty be knowingly and voluntarly enetered because it involves the waiver of a number of the defendant's constitutional rights. See Burden v. Alabama,584 F.2d 100, 101-02 (5th Cir. 1978). "A plea may be involuntary either because the accused does not understand the nature of the constitutional proctections that he is waiving,... or because he has such an incomplete understanding of the charge that

his plea cannot stand as an intelligent admission of guilt."
Henderson v. Morgan,426 U.S. 637, 645 n.13, 96 S.Ct. 2253,  2257n.13,
49 L. Ed.2d. 108 (1976)(citation omitted).

A plea is not voluntary in this latter sense "unless the defendant
received 'real notice of the true charge against him.'" Id. at 645,
96 S. Ct. at 2257 (quoting Smith v. O'Grady,312 U.S. 329, 334, 61
S.Ct. 572, 574, 85 L.ed. 549 (1941)). The defendant receives "real
notice" of the charge when he has been informed of both the nature
of the charge which he is pleading and its elements. See Henderson
v. Morgan,426 U.S. at 645-47, 96 S.Ct. at 2258-59. This is so be-
cause a plea of guilty represents, in essence, and admission as to
each and every element of the offense. See McCarthy v. Unites States,
394 U.S. 459, 466, 89 S.Ct. 1166,1171, 22 L.Ed.2d. 418(1969). In
addition, the defendant should understand how his conduct satisfies
those elements. United States v. Frye,738 F.2d. 196, 199(7th Cir.
1984).

The petitioner asserts his plea(s) were made unknowingly, involun-
tary, and unitelligently. Petitioner also specifically asserts that
the trial court and his attorney failed to inform him of the nature
of the charges/elements of the offense, or how his conduct satisfies
them prior to tendering a plea of guilty. Which resulted in a vio-
lation of due process. Furthermore, Petitioner did not understand
the true nature of the charges he pled guilty to. Gaddy v. Linahan,
780 F.2d. 935 (11th Cir. 1986), "At the very least, due process re-
quires that the defendant receive a description of the 'critical e-
lements' of the charged offense, such as the element defining the
requisite intent." Henderson v. Morgan,426 U.S. at 647 n.18,96 S.Ct.

at 2258 n.18.

Petitioner did not have an understanding of the law in relation to the facts as required by **McCarthy v. United states**,394 U.S. 459, "...because a guilty plea is an admission of all the elements of a criminal charge, it cannot truly be voluntary unless the defendant possesses an understanding of the law in relation to the facts.

Further, the petitioner asserts that he did not understand the significance of the constitutional rights he was forfeiting as required by **Boykin**,395 U.S. 238. The entry of a guilty plea involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. It is the trial court's duty to ensure that the defendant understands the rights being waived, and the record must reveal the defendant's voluntary waiver of the constitutional rights. **Boykin**, suppra 395 U.S. at 243, 89 S.Ct.1709. Petitioner asserts that he did not have an understanding of any of the three federal constitutional rights he waived as required by **Boykin**.

The petitioner asserts that his guilty plea(s) were not entered with the advice of competent counsel, as required by **Tollet v. Henderson**, 411 U.S. 258 (1973). Petitioner asserts that his counsel was ineffective. Claims for ineffective assistance of counsel are well grounded in the established precedent of **Strickland v. Washington**, 466 U.S. 668(1984), theSupreme Court of the United States set forth two (2) requirements the defendant must show in order to establish ineffective assistance of counsel when the defendant has pled guilty.

See Hill v. Lockhart,106 S.Ct. 366 (1985). First, the defendant must show that counsel's performance was deficient. Id. at 104 S.Ct. 2052-2069 (1989). Second, the defendant must show the...deficient performance prejudiced the defense. Id. at 104 S.Ct.2067-69. In the context of a guilty plea, meaning the petitioner must show that but for counsel's unprofessional error(s)the result of the proceedings would have been different. Id. at 694 S.Ct. 2052(emphasis added).

Petitioner asserts that his counsel did not explain any of the constitutional rights he would be waiving by pleading guilty, nor did he explain any element of any offense to which he was charged. Petitioner's counsel never explained the law in relation to the facts of his case, which could have given him a possible defense to the crime(s) for which he was charged. Therefore, clearly counsel's performance is deficient in this case, it prejudiced the defense, and kept the petitioner from knowingly, voluntarily, and intelligently entering a plae of guilty in these proceedings.

Petitioner asserts that if counsel had done any of these things he would not have entered a plea of guilty, and the outcome of the proceedings would have been different.

In the Instant case, the first defense attorney of the Movant/Petitioner Federal Public Defender Vincent Farina, asked to be dismissed of this case for he had comitted an error when he had erroneously advised the Movant/Petitioner to prematury plead guilty, additionally Movant/Petitioner never wanted to voluntarily admit his desire to traffic in 13 kilograms of cocaine, but only 3!, it is essential to

this Movant/Petitioner that a copy of the Court's transcripts of the day that Public Defender Farina made his declarations be ordered to be provided to him, for a proof of attorney Farina's statements and desire via request to be relieved as counsel for Maovant/Defendant. The Movant/Petitioner's previous requests for the needed transcripts have gone unanswered. Movant/Petitioner has solicited from his next attorney Israel Jose Encinosa, on various occasions, orally and by written request, (see letter of may 10, 2010)(June 17, 20)Exhibit I; also see Exhibit I a copy of the rebuttal of hearing dated 7-9-08 where it is indicated that sentencing was not held, defense attorney's oral motion to withdraw is granted, and new counsel would be appointed in a separate order, a status conference was set for August 20,2008 at 3:00pm.

The order granting the motion to withdraw and new counsel was appointed on July 10, 2008, see Exhibit I, Movant/Petitioner has exhausted all means available to him, in the attempt to obtain the needed transcripts which reflect attorney Farina's desired to be dismissed from represen-tation of his client, due to errors which he committed all attempts to obtain the needed transcripts have been invalid, which leaves him with no other alternative but to file suit on the Court Reporter; Ms. Robin Dispenzieri, case #1:11-CV-20008-DLG, see Exhibit 2 where Movant/Pe-titioner will prove that his wife Annia R. Nunez, paid Court Reporter Robin Dispenziori the sum of $117.00 which was amount agreed to for the needed transcripts. In Exhibit 2, we can see a copy of the money order dated October 28, 2010 also included is a copy of the E-Mail where Reporter Dispenzieri stated that the needed transcripts would be delivered within 7 days from from the receipt of payment. 5 months have

now passed and after several requests, have not been provided the needed transcripts and therefore brought before this Honorable Court complaint no.1:11-CV-20008-DLG and due to the delay in this process Movant/Petitioner contracted Jose Francisco & Associates, a Paralegal Office located at 9100 S. Dadeland Blvd. Suite 15, Miami, FL 33156 Telephone Number:(305)242-0770(see copy attached Exhibit 3)to finalize the process and to obtain the needed transcripts which prior attorney and Court Reporter Dispenzieri has failed to provide.

On March 14, 2011, the offices of Jose Francisco & Associates received from Court Reporter Dispenzieri transcripts for the court proceedings of August 26, 2008 and the Movant/Petitioner's wife Annia R. Nunez paid additional $54.00 to Jose Francisco for this service, when the cost of the August 26, 2008 proceedings were to be included in the original cost of $117.00, already paid to Robin M. Dispenzieri RPR. the payment $117.00 includes payment for the following items which have still not been provided.

1. Minute Entry for proceedings held before Judge Marcia G. Cooke Status Conference of April 30, 2008, document 32;
2. Minute Entry for proceedings held before Marcia G. Cooke, Status Conference held on July 9, 2008 entered July 10, 2008,document 37.

Not having the afore mentioned transcripts has prevented Movant/Petitioner from demonstrating to this Honorable Court the ineffectiveness of attorney Farina during the court process of whom he pled guilty, where at this time Attorney Farina acted unconstitutionally, thus, rendered ineffective representattion of Movant/Petitioner.

Thus, Movant/Petitioner submits and considers this situation consti-

tutes a legal violation to the appropritae Due Process Clause, see

Fifth and Fourteenth Amendment as stated this Honorable Court in

the person of the Judge Marcia G. Cooke on September 24, 2008, see

copy attached Exhibit 4, transcript of preliminary sentencing proceeding

page 10.

Those indicate that in this case, the sppression of evidence favorable

to an accused upon request violate due process, where the evidence is

material either to guilty or to punishment, irrespective of the good

faith of bad faith of the prosecution, <u>Brady v. Maryland</u>,323 U.S. 83,

87 (1963). And the court should require of Court Reporter to produce

documents, because those indicate that the court report in this case

is conspiring against the Movant/Petitioner to violate the Due Process

Rights, in light of new evidence, it is more likely than not that no

reasonable juror would have found Petitioner guilty beyond a reasono-

able doubt. <u>Schop v. Delo</u>,1155 S.Ct. 851. Relief soought.

## WHAT MOVANT MUST PROVE TO OBTAIN RELIEF

Movant claims that "trial counsel did not provide him with effective

assistance of counsel as to his decision to plead guilty or to go to

trial." The decision whether to plead guilty or to go to trial is the

defendant's. In making it, he is entitled to the effective assistance

of counsel. <u>Hill v. Lockhart</u>,474  U.S. 52, 57,106 S.Ct. 366, 88 L.Ed.

2d 203 (1985);<u>Powell v. Alabama</u>,287 U.S. 45, 57, 53 S.Ct. 55, 77 L.

Ed. 158 (1932)(stating that the period from "arraignment unitl the

begining of...trial" is "perhaps the most critical period of the pro-

ceedings.");<u>United States v. Blaylock</u>,20 F.3d 1458, 1469 (9th Cir.

1994).

Because the decision is the defendant's, counsel's obligation to assist is not fulfilled merely by telling the defendant whether he should plead guilty or to go to trial. "[A]n accused is entitled to rely upon his counsel to make an independent examination of the facts circumstances, pleadings, and laws involved and then to offer his informed opinion as to what plea should be entered." **Von Moltke v. Gillies**,332 U.S. 708, 721, 68 S. Ct. 316, 92 L.Ed. 309 (1948). Thus, the subject matter of the motion is counsel's advice to the elements the prosecution must prove, how the evidence matched up (or not) to the elements, and the range of penalties he faced if convicted, at trial or by guilty plea, on one or more charges.

Instead, the focus on the content of counsel's advice and on what a reasonable person in position would have chosen in response to competent advice. Must show that counsel's advice fell outside the broad range of competence demanded of criminal defense attorneys and that, but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. **Strickland v. Washington**,466 U.S. 668, 687-88, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);**McMann v. Richardson**,397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed. 2d 763 (1970). Because motion is directed at his choice to go to trial he must show a reasonable probablility that, but for counsel's errors, he would have pleaded guilty. **Nunes v. Mueller**,350 F.3d 1045, 1052 1053 (9th Cir. 2003);**Turner v. Calderon**,281 F.3d 851, 879(9th Cir. 2002). A "reasonable porbability" is a probability sufficient to undermine confidence in the out come. It is less than a preponderance of the evidence. **Strickland**, U.S. at 693-94.

Contrary to the reasoning of the Answer and counsel's affidavit, the

Strickland test is objective. It does not depend on "the idiosyncracies of the particular decisionmaker." Hill,474 U.S. at 60(quoting Strickland,466 U.S. at 695). Where a defendant claims his counsel failed to investigate the case adequately, :the determination whether the error 'prejudiced' the defendant....will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," id. at 59--not whether the defendant necessarily would have taken counsel's advice. Where the alleged error is failure to advise of an affirmative defense likely would have 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.: id. Likewise, here, the prejudice inquiry is addressed by asking whether a reasonable person would have pled guilty if competently advised about his case.

Here, prejudice is objectively clear on the face of the record. Counsel's advice would have gravely misled a reasonable person in position about the nature of the charges he faced, about the strength of the evidence against him, and about the penalties he faced. 1 To whatever extent is required to allege that he personally would have pleaded guilty instead going to trial, Hill,474 U.S. at 59;Turner,281 F.3d at 879, that requirement is satisfied by his statement that he "does not seek a new trial" and that if he fails to enter a guilty plea, "his 170 month prison sentence would not be changed."

REMEDY

"[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Del, 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). A district court has broad and equitable authority to implement a remedy under 28 U.S.C.§2255.

been correct all along. See **Blakely v. Washington**,124 S.Ct. 738 (2004); **United States v. Booker**,125 S.Ct. 2531 (2005). But that only resolved the interpretation of **Apprendi**. **Blakely** and **Booker** did not settle the argument whether attorneys who represented defendants at sentencing or on appeal after **Apprendi** and before **Blakely** or **Booker** were ineffective for failing to make the **Apprendi** argument.

## PLEA AGREEMENT FRAUD

In a case in LAs Vegas, Nevada, a former NFL player was approached by his attorney and told that the government had offered him a plea deal in a tax case and if he pled guilty today(prior indicment, waiving his right to indictment)that he would get 5 years in prison, but if he pled guilty the next day he would get 20 years in prison. Several things are wrong with this picture. First, his attorney has no authority to determine a sentence. Only a judge can do that. Second, a US Attorney has no authority to determine a sentence. Only a judge can do that. Third, his attorney never did an investigation of the case as is required by ABA standards and State Bar standards. Fourth, the plea threat was a coercion on the defendant, a violation of his Constitutional rights to have a grand jury convened and a right to trial, and a fraud by the prosecutor and his own defense counsel. That is fraud from the inducement. Fifth, as a matter of law, the defendant was not guilty of the charge as he had never comitted a crime. Sixth, when asked about the investigation of the case, the Defendant explained that an investigation had been proceeding for 5 years, but the grand jury was prepared to hand down an indictment **in one day.** How is that possible? Can a grand jury investigate 5 years worth of evidence in one day?

Another example: In a drug case in the Middle District of North Carolina, a Defendant was promised by his attorney that if he would sign a plea agreement, even though no evidence existed against him, that he would be given one year probation and not to have to go to jail. When the presentence report was presented to the Defendant, seven years in prison was recommended as his sentence. In a classic bait and switch scheme used in plea bargain scams, the defendant was lured into signing a plea agreement and then the deal was changed him. Yet, the government had no evidence and could not have proven his guilt if he had gone to trial. When the Defendant filed a motion to dismiss based on a bait and switch scheme, his attorney, caught in a fraud, was so mad that he threw the papers at the Defendant in open court. Now the defendant is requesting investigation of both his attorney and the US attorney for possible disbarment and criminal prosecutuion.

Think of plea agreements like any other contract. In a contract all parties are required to present all relevant facts before you enter into the contract. If they do not, they commit contract fraud, manipulation of the proceedings. ILS can prove contract fraud in any plea agreement, by investigating the facts and the law. The Governemnt never presents all the evidence prior to someone enetering a plea.

A plea agreement is governed by the law of contracts. It may be breached. The Federal Rules of Criminal Procedure and the Federal Rules of Evidence require that evidence of withdrawn guilty pleas, statements made in the course of proceedings under FED. R. CRIM.P. 11, and statements made in the course of plea negotiations that do not result in a guilty plea or that result in a guilty plea that is later with-

drawn are anadmissible at trial against the defendant who participated in the plea discussions. In addition, the defendant must be competent to enter a guilty plea. Rule 11 establishes guidelines to ensure that a guilty plea is made knowingly and voluntarily. <u>To ensure that a plea is made voluntarily, the court must establish that the guilty is not the result of force, threats, or promises apart from the plea agreement.</u> A defendant seeking to with draw his or her guilty plea after the district has accepted the plea, but before it has accepted the plea agreement, can do so if he/she shows a fair and just reason for the withdrawal. Fraud is a justifiable reason, which can be shown in any plea agreement.

Also, if the defendant can show a lack of jurisdiction on the part of the court to prosecute him/her, or if he/she can show the plea agreement was fraudulently entered unto, such as coercion of the defendant or his/her family, or he/she can show that Due Process was violated, the plea agreement is void. Lack of jurisdiction can be shown in any case.

In almost all plea agreements we have seen, the following scenario happens: The defense attorney, failing to properly investigate the case, and interested in maximizing the amount of money she/he will earn for a minimal amount of time spent on the case, will take information from the US attorney, whether it be correct or complete, and will try to convine his/her client to enter a plea agreement, promising a much lower sentence if the plea is entered. The defense attorney will paint a picture of a much lower sentence if the defendant fights the case or determined any proper defenses. In drug cases, in many instances, the defense attorney has not even obtained lab

reports to determine if there were any drugs or if the  drug tests are positive and how much drugs were involved. Thus many people are sentenced on drug cases, even though no evidence of drug exist. The defendant is guilty or not, will then sign the plea agreement in order to get back to his life and family as soon possible. **THEN COMES THE SURPISE!!!.** The probation officer does a PSIR, who gets his.her information from the US attorney, who gets bonuses for longer sentences, and recommends basically the same sentence that the person would have gotten if he had not signed the plea agreement.

**Plea Bargaining**. There is no constitutional right to plea bargain. (Note 1). The only rights provided by the Constitution in criminal cases are the right to trial, the right to face to face your accusers, and the right to present evidence on your behalf. Even if you decide to enter into a plea agreement, the prosecution is still required to provided you the evidence that proves your case so you can intelligently enter the plea. Prosecutors must comply with equal protection requirements when conducting plea bargaining. (Note 2).

**Rule 11(e)**. Rule 11(e)of the Federal Rules of Criminal Procedure governs the conduct of the government and the defendant during plea negotiations. (Note 3). Rule 11(e)(1)authorizes plea agreements when a defendant pleads guilty to the charged offense or to a lesser or related offense. (Note 4). Under such an agreement, the prosecutor may move for dismissal of other charges. (Note 5), make a nonbinding sentencing recommendation to the court (Note 6), agree not to oppose the defendant's request for a particular sentence, (Note 7), or agree that a specific sentence is apprpriate for the disposition of case. (Note 8). Although the government must abide by te specific terms of the agreement, it need

not "enthusiastically" defend its sentencing recommendations. (Note 9). The court is prohibited from participating in plea negotiations. (note 10). Another way to overturn your plea is to show that the court failed to follow each and every step required by Rule 11 (Due Process), or that court failed to instruct you as to all consequences of the plea process.

Venue. Plea agreements in state prosecutions are generally not binding on other state or federal jurisdictions. (Note 11). Plea agreements in federal prosecutions bind the U.S. Attorney's office only in the district in which the plea is entered. (Note 12).

Law of Contracts. a plea agreement is governed by the law of contracts (Note 13);thus, it may be breached. (Note 14). If the defendant breaches a plea agreement, the government is free to re-prosecute the defendant (Note 15)and may bring more serious charges. (Note 16). Moreover, the government may revoke a plea agreement for a defendant's breach even after the defendant has been sentenced. (Note 17). you may overturn the plea agreement if you can show the court had no jurisdiction or that the plea agreement was induced by fraud.

Breach of Plea Agreements. A defendant who alleges that the goverment breached a plea agreement may be entitled to an evidentiary hearing or, at the court's discretion, discovery or expansion of the record. (Note 18). If the defendant demonstrattes that the government did breach, the court may allow withdrawal of the plea, alter the sentence, or order specific performance of the agreement. (Note 19). If a federal court finds that the state prosecutors have breached a plea agreement, it should remand the case so that a state court can devise the proper remedy.

<u>Statements Made By the Defendant</u>. To foster open discussions during negotiations, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence provide that evidence of withdrawn guilty pleas, statements made in the course of proceedings under RED.R. CRIM.P.11, and statements made in the course of the plea negotiations that do not result in a guilty plea or that result in a guilty plea that is later withdrawn are inadmissible at trial against the defendant who participated in the plea discussions. (Note 20). Statements made to government agents who are not attorneys, however, are not generally sunject to this evidentiary bar. (Note 21). Statements made during plea negotiation are also inadmissible for impeachment purposes. (note 22). Nonetheless, the defendant may waive the protection of Rule 11(e)(6). (Note 23).

A federal prosecutor breached a plea agreement with s atipulated offense level by supporting the presentence report's recommendation that the defendant be sentenced under the "career offender" provisions of the U.S. Sentencing Guidelines the U.S. Court of Appelas for the Fifth Circuit held Oct 15. (<u>United States v. Roberts</u>,5th Cir.No. 09-40268, 10/15/10).

The career-offender provisions include a table with enhaced off3nse levels for defendants with two or more predicat prior convictions. The plea agreement in this case permitted the government to argue "offense characteristics or guideline adjustments", and the government pointed out that the General Application principles in U.S.S.G.§1B1.1(f)refer to the career-offender provisions as an "adjustment".

In an opinion by Jdge E. Grady Jolly, the circuit court noted that it

had not previously ruled on whether the career-offender enhacemnent
is correctly considered a guideline adjustment or a base offense level.
It cited only one other case that "directly held that the Government
breaches a plea agreement by advocating for application of the career
offender enhacenment if the plea agreement explicitly set forth a
different base level", United States v. Fowler, 445 F.3d 1035 (8th Cir.
2006).

Notwithstanding the language in Section 1B1.1(f), the Fifth Circuit
decided that the plea agreement did "not contemplate that the Government
would argue for a new base offense level differing from the one sti-
pulated in the agreement". The career offender table "resets the base
offense level," and "consequently, the plea agreement does not provide
Roberts with  reasonable understanding that the government may argue
for application of the career-offender enhacenment", the court
reasoned.

The government also argued that supporting the PSR's recommendation
did not constitute advocay that conflicted with the stipulated
offense level. The court found support for its contrary conclusion in
United States v. Munoz, 408 F.3d 222 (5th Cir. 2005). In that case, the
court held that a prosecutor breached a plea agreement with a stipu-
lated offense level by responding to queries from the sentencing
judge that provided the basis for an enahacement to the offense level.
Although Munoz dealt with a different factual situation, "the logic
is...applicable to this case and consistent with a line may not argue
for an enhancement that would rise an offense level when the govern-
ment agreed to a stipulated base offense level in the plea agreement,"
the court said.

In the present case, a fraud was committed during the plea process, because on April 30, 2008, prior to the plea guilty, this court and the Assistant U.S. Attorney Mr. Scott Edenfield, promised the Movant/ Petitioner, that did not will use the enhancement of obstruction of justice, to that Petitioner accept the guilty plea and were not go to trial with jury. Also on June 7, 2007, day of the arrest of the Petitioner, was recorded the conversation of that day, where the Petitioner stated and affirmed that only want it and have the money to buy those three kilograms, not 13 that the government allege and was induced the Petitioner by his defense counsel to accept a plea with the quantity of 13 kilograms of cocaine, that conversation was recorded on June 7, 2007, was missing by the government in a very bad faith act, that constitute a <u>perfect fraud in all extension of the word.</u>

2.WHETHER TRIAL COUNSEL FAILURE TO OBJECT THE APPLICATION OF TWO(2) LEVELS FOR OBSTRUCTION OF JUSTICE PURSUANT TO U.S.S.G.§3C1.1 WHEN WAS APPLIED OF MANNER CONSECUTIVE; IF PRIOR CONFERENCE TO PLEA HEARING THE DISTRICT COURT AND U.S. ATTORNEY HAD PROMISED THAT THESE LEVELS WILL BE APPLIED OF MANNER CONCURRENT.

Also the use of the enhancement of obstruction of justice, to increase the sentence of the Petitioner, without being stipulated by the Petitioner in the guilty plea, constitute a violation of the plea as held, see <u>United States v. Robert</u>,5th Cir. No. 09-40268, 10/15/10).

In a prior conference to the plea hearing specifically on April 30, 2008 this court and the Assistant U.S. Attorney Mr. Scott Edenfield, promissed to the Petitioner, that if he accept a plea guilty and renounce to a trial with jury, it will not apply the "two levels" of enhancement

for obstruction of justice, in that sense the Petitioner was induced
to accept a plea guilty under a false promese by this court and U.S.
Assistant Attorney, situation that constitute a **fraud.**

Petitioner considers that to continue with the enhancement, such as
the obstruction of justice, where the charge of perjury, was not charged
in the indictment neither found by a jury without a reasonable doubt,
nor admitted by the defendant at the guilty plea, is a violation of
the Sixth Amendment under <u>Apprendi, Blakely, and Booker.</u>

In the case at bar, the governmentsupportsits argument of obstruction
of justice, with various decisions before <u>Apprendi, Blakely, and Booker</u>
when the guidelines were mandatory and declared unconstitutional, on
January 12, 2005. To continue practicing the aforementioned, is to
assume that the guidelines are mandatory. During sentencing a judge
should not only declare, theorically, that the guidelines are advisory
he has to complete in practice. Assuming a sentence applying enhan-
cement which factors have not been the result of the verdict of him
or the admission of the defendant, is to assume the guidelines are
mandatory. This practice is the same as if we where under the mandatory
systems of the guidelines before Booker. If it is continued to accept
this stituation, we would return to the same draconian system that
existed before Booker.

What signifies with the decisions of Blakely and Booker that this
practice has changed notibly. For a court to sentenced a defendant
now, it should consider the before and after Booker, there are two
different scenarios.

3.WHETHER TRIAL COUNSEL's FAILURE TO FILE OBJECTIONS TO THE PSR, REGARDING TO CRIMINAL HISTORY CATEGORY AND IS INCONSISTENT WHEN FILE OBJECTIONS TO DRUG QUANTITY; IF HE IN THE SAME ADVICE AND PERMIT THAT MOVANT/PETITIONER BE PLEA GUILTY TO A DRUG QUANTITY THAT MOVANT NEVER ADMITS AND AFTER THE OBJECT TO THE PSR.

Trial counsel representation Mr. Vicent P. Farina fall below the "range of competence demanded of attorneys" when he failed to cha- llenge the plea guilty's computation of the offense and inconsistely challenge the PSR's offense level computation. See **Page v. United States**,884 F.2d. 300, 301 (7th Cir. 1989); see also **United States v. Doy**,969 F.2d. 39,43 (3rd Cir. 1992). It is clear from the objections to the presentence report and position with respect to sentencing factors, see copy exhibit 5; where Mr. Farina had little or no ex- perience in Federal practice, a fact which did not could escape the court's attention; because is unreasonable and inconsistent that Mr. Farina filed any objections to the Presentence Investigation Report is fact, of the drug quantity . whe he advice and induced to the Mo- vant/Petitioner to accept and admit in the plea-guilty of May 6, 2008 to Count 1, 2, and 3 in the indictment, where the Count 1 charge a drug quantity of 13 kilograms of cocaine, in that sense the page and 7 and 8 of the transcript of change of plea hearing state the following:

> THE COURT: Sir,you are pleading guilty to Counts 1, 2 and 3 in the indictment. Count 1 is conspiracy to poseess with intent to distribute cocaine, in violation of Title 21 U.S.C. Sections 841(a)(1) and 846. Count 2, possession with intent to distribute cocaine, in violation of Title 21 U.S.C. Section 841(a)(1), and

Count 3, possession with intent to distribute marijuana, in violation of Title 21 United States Code Section 841(a)(1). You should understand what the maximum penalties may be for those crimes. As to Count 1, you could receive up to life; as to Count 2, up to 40 years; as to Count 3, up to 20 years. All are followed by terms of supervised release and a special assessment of $100.00 on each count.

Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Sir, have you discussed the sentencing guidelines with your attorney?

THE DEFENDANT: Yes.

THE COURT: And you understand that in this case you will be sentenced pursuant to the sentencing guildelines?

THE DEFENDANT: Yes.

THE COURT: and you understand the guidelines assign a score first to your criminal history and then to the offense?

THE DEFENDANT: Yes.

THE COURT: Sir, you should understand that any estimate of any sentence that has been given to you is just that, an estimate. I wont't know what your sentence will be until I have had an opportunity to review your pre-sentence report in this case.

THE DEFENDANT: Yes.

THE COURT: Sir, you should understnad that, under certain circumstances, you may appeal this sentence. Under other circumstances, the government may appeal this sentence. So, for example, if I were to sentence you to above the advisory guideline range, you would be able to appeal this sentence. If

I were to sentence you to below the advisory guideline range,
the government may bale to appeal this sentence.

Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Mr. Edenfield, I understand there is no plea agree-
ment in this case; is that correct?

MR. EDENFIELD: That is correct, You Honor.

THE COURT: Sir, is there anyone threatening you to have a plead
guilty in this case?

THE DEFENDANT: No.

THE COURT: Did anyone tell you something bad, other than the
criminal charges in this case, would happen to you if you did
not plead guilty?

THE DEFENDANT: No.

THE COURT: Sir, are you pleading guilty because, after discussing
this with your attorney, you think it;s the best thing for you
to do?

THE DEFENDANT: Yes.

THE COURT: Sir, you should understand that you are pleading
guilty to a felony offense and in this country, that plea of
guilty, if accept, will deprive you of certain valuable civil
rights, your right to vote, the right to hold office, the
right to serve on a jury and the right to possess any kind of
firearm. Because you are are not a United States citizen, I
must also advise you that you that your plea of guilty could
affect your ability to remain in the United States.

Do you Understand that?

THE DEFENDANT: Yes.

See copy attached Exhibit 6 of transcript of change of plea hearing, is unreasonable, inconsistent and out of logic, that a professional in the matter of the criminal procedure, advise and induce a criminal defendant to admit and accept in an plead guilty a specific drug quantitity and after the objections to the Presentence Investigation Report (PSR) of date June 30, 2008, see the Exhibit 5 object the following with respect to the drug quantity, in that sense Mr. Farina stated:

The Defendant. Angel Balbuena, through undersigmed counsel, respectfully files, his objections to presentence investigation report and position with respect to sentencing factors, and in support thereof states:

On May 6, 2008, Mr. Balbuena plead guilty to Counts I,II and III of a three-count indictment that charged him with attempting to possess with intent to distribute 13 kilograms of cocaine in violation of Title 21 U.S.C.§846, Count II charged Mr. Balbuena with possession with intent to distribute more that 500 Grams of cocaine in violation of Title 21 U.S.C.§841(a)(1) and Count III charged him with possession of intent to distribute marijuana in violation of Title 21 U.S.C.§841(a)(1).

Mr. Balbuena objects to page 7, paragraph 19 of the presentence investigation report entitled "Offense Level Computation". Specifically, the defendant objects to his being held accountable for 13 kilograms of cocaine which renders him at a base offense level of 32. It is Mr. Balbuena's position that while there was discussion of an

of an additional 10 kilograms of cocaine that discussion was created and supported by the confidential informant. Moreover, Mr. Balbuena was not charged in a conspiracy with an attempt to possess drugs. In support of that fact, the officers offered 10 plus kilograms of sham cocaine. Wherefore, the defendant, Angel Balbuena, respectfully requests the court to hold him accountable for the quantity of drugs that he desired to purchase specifically three kilograms of cocaine.

The defendant's second objection is essentially two-fold. Page 7, paragrapgh 24 and 27 respectfully asserts as upward adjustment for his obstruction of justice and a denial of a downward adjustment for acceptance responsibility. U.S.S.G.§31.1(n. 4 and 5)reflect that conduct resulting in an enhancement under the application of obstructing justice ordinarly indicates the defendant has not accept responsibility for his criminal conduct. The note goes on to indicate that there may be, extraordinarly cases in which adjustments under §3C1.1 and 3E1.1 may both apply. Furthermore, that is the senetncing judge who is in the unique position to evaluate a defendant's acceptance of responsibility and that the sentencing court's determination is entitled to great deference on review.

Mr. Balbuena asserts he indeed in addition to cooperating with police plead guilty to all charges against him without the benefit of a plea agreement and acknowledging his acceptance of responsibility.

But additionally is neccessary point here, that Mr. Farina in his objections to the PSR, did not object the matter of criminal history category, where he could demonstrate that the Movant/Petitioner is not Category II, but Category I. Pursuant the Presentence Investigation

Report (PSR), see page 8 part B. The defendant's criminal History Exhibit 7; Petitioner was sentenced on 10/15/2002, to 6 months probation, 10 days jail 4A1.1(c), a point was added for this prior sentence also on 8/19/2003, Petitioner was sentenced to a 1 year probation in the case dkt:F03-17304, see copy attached in the Exhibit 7, page 9 of the Presentence Investigation Report (PSR), where a 1 point was added pursuant 4A1.1(c); and finally other point was added in the case ckt#B08-12896 of date 3/10/08:cts 1 and 2 convicted credit time served ct3 dismissed pursuant 4A1.1(c), see page 11 of the presentence investigation Report (PSR) Exhibit 7 . The failure of Mr. Farina to object the PSR with respect to the History Criminal Category prejudiced the Petitioner, because these prior's offense above mentioned constituyed three (3)misdeamenors, that is not were felonies and should be computed to criminal history category, where Petitioner passed erroneously of category I to category II, which resulted in an increase in his sentence of 17 months, where the range in thye category I is 151-188 and in the category II the range is 168-210.

Mitigation of senetnce is the game when a defendant agrees to enter a plea of "Guilty"(1)whether with or without a Rule 11 debriefing session;(2)wheter with or without a Plea Bargain Agreement;(3)whether with or without a Factual Basis; and (4)whether with or without the consideration of "relevant conduct". In all of the possible scenarios above identified, the most important events where effective professional assistance of counsel is critical are:(1)the scheduling and preparatiion for a debriefing conference with the prosecution;(2)the preparation of and concurrence with by the prosecution of a Sentencing Memorandum and a Stipulation of Facts, including all agreed Relevant Conduct;

(3)the preparation of the family and the defendant for the Pre-Sentence Investigation Interview;(4)the preparation and filing of written objections to the PSI Report in the the evnt a denial of acceptance of responsibility is included in the report of the USPO; and (5)the preparation of the defendant and defense counsel for argument and allocution at the  sentencing hearing with respect to the factors listed in 18 U.S.C.§3553(a). These critical stages of the proceedings are even more important and require even more attention and preparation when, as in the case at bar, the offense is a drug-trafficking conspiracy. It is a given that the defendant and his most trustworthy family member must be educated and prepared to accept and take advantage of the provisions of the United States Sentencing Guidelines for mitifation of sentence--most certainly, acceptance of responsibility, debriefing under a Rule 11 proffer for purpose of the "safety valve", substantial assistance, and mitigation of sentence under the factors listed in 18 U.S.C.§3553(a).

When a defense counsel fails to take serious and effective action with regard to the issues affecting the sentencing of his client, the entire sentencing scheme is placed in doubt with respect to achieving a reasonable and just result--the correct sentence without doubt as to whether all venues were taken into consideration. When, as in this case, the record is devoid of any meaningful effort on the part of defense counsel, this cannot be swept under the rug as trial strategy or and uncooperative defendant.

Defense counsel should have acknowledge about and use resources such as Howard Zehr's The Little Book of Restorative Justice and/or the suggestions and guideance provided by the U.S. Sentencing Commission,

Alternative Sentencing in the Federal Criminal Justice System, 20 (January 2009).

According to **Rule 32(f)(1)**of the Federal Rules of Criminal Procedure within 14 days after receiving the Pre-Sentence Investigation Report, the parties must state in writing any objections, including any objections to material information, sentencing guidelines ranges, and policy statements contained in or omitted from the report. <u>United States v. Angeles-Mendoza</u>,407 F.3d 742, 748-49 (5th Cir. 2005).Also consider, **Rule 32(c)(A)(2)(d)(f)(i)(A-D)**of the Federal Rules of Criminal Procedure which gives the district court broad discretion over this matter in that it may, for good cause, extend the time set forth in the rule and/or allow a party to make a new objection at any time before sentence is imposed. <u>Id.</u>,page 49. Also see, <u>United States v. Wheeler</u>,322 F.3d 823, 827 (5th Cir. 2003).

A party must raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for appellate review. <u>Mondragon-Santiago</u>,564 F.3d 357,(5th Cir. 2009), citing <u>United States v. Rodriguez</u>,15 F.3d 408, 414 (5th Cir. 1994).

This Court reviews a sentencing objection that Appellant failed to present to the district court for plain error. <u>United States v. Peltier</u>,505 F.3d 389, 391-92 (5th Cir. 2007),cert. denied, 128 S.Ct. 2959(2008). Also see, <u>United States v. Ricardo</u>,472 F.3d 277, 284 (5th Cir. 2006). "Plain error" requires the appellant to show an error that is clear or obvious and that affects his substatntial rights. <u>Puckett v. United States</u>,120 S.Ct. 1423, 1429 (2009). The

Court's discretion to correct the error arises only if the error
seriously affects the fairness, integrity, or public reputation of
judicial proceedings. Id.

This Court remedies the forfeited error only when it is plain and
affects the defendant's substantial rights. **United States v. Mares**,
402 F.3d 511, 520 (5th Cir. 2005).

When a party post-conviction objects to the denial of a two (or three
point)reduction for acceptance of responsibility and, of course, the
subsequent denial (or even consideration of)a two-point reduction and
relief under the "safety valve", the appellate court reviews the
district court's interpretation or application of the Sentencing
Guidelines de novo, but it reviews factual findings for clear error.
**Unites States v. Partida**,385 F.3d 546, 562 (5th Cir.2004) citing
**United States v. Simpson**,334 F.3d 452, 455-56 (5th Cir. 2003).

A defendant who enters a guilty plea is not entitled to an downward
adjustment for acceptance of responsibility as a matter of right; in
connection with a plea, the sentencing court is instructed to consider
whether the defendant truthfully admitted the conduct comprising the
offense, including additional relevant conduct for which he is res-
ponsible. **United States v. Angeles-Mendoza**,407 F.3d 742, 752-53 (5th
Cir. 2005). The Fifth Circuit reviews the sentencing court's deter-
mination of acceptance of responsibility with even more deference
that is due under a clearly erroneous standard because the sentencing
judge is in a unique position to assess the defendant's acceptance
of responsibility and true remorse. Id.

Since this is the standard of review in this Court, it is even more

incumbent on defense counsel to know how to work in the sentencing system effectively, particularly in honinh his skills to gain the cooperation and trust of his client for purpose of maximizing the pre-sentence process in his favor as much as the U.S. Sentencing Guidelines, his knowledge, and skill permit.

When, in the absence of written objections as required by Rule 32 to a PSI Report's denial of acceptance of responsibility in light of defense counsel's duties to know the sentencing scheme fully and to conduct effective pre-sentence activities and conduct and argue mitigation investigation, the U.S. Supreme Court assesses the reasonableness of defense counsel's performance, under the long referred ABA STANDARDS, PROSECUTION FUNCTION AND DEFENSE FUNCTION, Standard 4-4.1(a)[Duty to Investigate]and 4-8.1[Duty to Know](3rd Ed. 1993), in determing whther counsel failed to follow those standards and whther that failure contributed to an increased sentence for purpose of a claim of ineffective assistance of counsel. **Rompilla v. Beard**, 545 U.S. 374, 387 (2005); and **Strickland v. Washington**,466 U.S. 688 (1984). When defense counsel fails to follow these standards, and that failure contributes to an increased sentence for the defendant, counsel has been ineffective mo matter how small the increase in sentence may be. **Glover v. United States**,531 U.S. 198-99 (2005).

Given the decisions:**United States v. Booker**,543 U.S. 220(2005);**Rita v. United States**,127 S.Ct. 2456(2007);**Gall v. United States**,128 S.Ct. 586(2007);**Kimbrough v. United States**,128 S.Ct. 558 (2007);**Spears v. United States**,129 S.Ct. 840 (2009); and **Nelson v. United States**,129 S.Ct. 890 (2009), defense now has both the opportunity and the responsibility (1)to know the ins and outs of the U.S.S.G.; (2)to in-

vestigate sentencing strategies and execute them by gaining the coope-
ration and trust of his client; and (3)to provide sentencing judges
with the information and reasons to support a sentence that is not
greater than necessary given the factors of **18 U.S.C.§3553(a)**.

Where a defendant does not object to the denial of acceptance of
responsibility, this Court's review is limited to the "plain error"
standard. <u>United States v. Medina-Anicacio</u>,325 F.3d 638, 647(5th Cir.
2003). Whether a defendant has sufficiently demonstrated an acceptance
of responsibility is a question of fact. <u>Id.</u>, citing <u>United States v.</u>
<u>Spires</u>,79 F.3d 464, 467 (5th Cir. 1996). The defendant bears the
burden of demonstrating that he is entitled to the reduction, and
this Court reviews the sentencing court's determination with even
more deference than the pure "cleraly erroneous" standard. <u>Id.</u>, citing
<u>United States v. Flucas</u>,99 F.3d 177,180 (5th Cir. 1996). Nevertheless,
when no objection is lodged by the defense counsel, this Court re-
views the sentencing court's judgment for plain error. <u>Id.</u>(Citations
omitted).

In summary, the standard of review for both the claim of ineffective
assistance of counsel and the denial of a reduction for acceptance
of responsibility is "plain error" since no objection was lodged
below as to either theory of appellate relief.

It is, accordingly, both sad and unfortunate that (1)no successful
debriefing session was had under Rule 11 Agreement; (2)that no Sen-
tencing Memorandum and a Stipulation of Facts (including all rele-
vant conduct to which the defense counsel and the prosecutor could
negotiate and approve)was submitted to the USPO and the Government on

behalf of the defendant so as to meet the required admissions of
fact and responsibility to qualify for relief under **U.S.S.G.§§3E1.1(a)**
(3 points for Acceptance of Responsibility)and **3E1.1(b)**(2 points for
the Safet Valave).

Notwithstanding that defense counsel was present during the Pre-
Sentence Investigation Report interview, it is obvious that Petitioner
was not properly prepared regarding the magnitude of the interview.
(PSIR,¶¶29-31, pp. 10-11). And, even if (1)Petitioner is not an arti-
culate high school non-graduate, or (2)if he was in fear of retaliation
from individuals which he had come into contact with, or (3)fearful
for his family, it was incumbent on defense counsel to meet with his
client and his family **prior** to the PSI Report interview and defuse
those issues. A diffence of 50 month's confinement is certainly a
strong predicate to convine client and family, particularly if you
can show them that the process is conducted insecrecy and that the
PSI Report is sealed immediately after sentencing.

The sentencing hearing also indicates how un-prepared Petitioner was
with respect to allocution even if he was aware that a difference of
50 month's sentence was in the balance--and that, too, is a matter
of conjecture given the paucity of the transcript of the sentencing
hearing.

There was no allocution, no discussion of the circumstances of the
offense that might merit mitigation of sentence under **18 U.S.C.§
3553(a)**.

Defendants cannot be left to the consequences of their own ignorance,
fear, a stubborn personality or, as is often the case, an inordinate

suspicion of the system of criminal justice. Instead, defense counsel must explore all techniques and avenues in order to convince his client to follow his professional recommendations so as to arrive at a just result no matter how underserving an individual defendant might be. Sentences must be as low as possible or at least as low as genuine zeal for a client can achieve.

As the record discloses, too much was left to the performance or lack thereof of Petitioner(1)at the Pre-Sentence Investigation Report interview with respect to Acceptance of Responsibility; and (2)the opportunity for him to present arguments, documents, or other information to the sentencing judge in support of mitigation of the sentence under 18 U.S.C.§3553(a)at the sentencing hearing. The un-professional pre-sentence and sentencing representation that Petitioner received and the lack of any review by the district court by way perhaps of a mandatory cooloquy at the sentencing hearing and/or a sealed written waiver of the opportunity to fully and truthfully debrief under Rule 11 or at the PSI Report interview once an election is made to enter a plea, would give defendants adequate protection and make the record clear as to whether the election not to fully and truthfully debrief was made knowingly and intelligentlly and to perhaps explore whether additional time is needed by the defendant and defense counsel to properly avail themselves of the U.S.S.G. remedies before the sentence is finally imposed.

Inquiring whether the immigration consequences of a plea are fully communicated to and understood by a non-citizen is madated by Padilla v. Kentucky--couldn't and shouldn't such a procedure also be adopted whn the consequences for defendants who supposedly intelligently and

knowingly failed to accept full responsibility are not clear such as
when the record suggests the defendant and defense counsel did little
to gain the relief that is at the heart of a proper defense and the
ultimate goals of the United States Sentencing Commission?

It is only when district and appellate courts address these cir-
cumstances and issue that the sentencing process can evolve and funct-
ion optimally as mandated by the U.S. Supreme Court's decisions.

Under 18 U.S.C.§3742(a)(1)(d)(e)(1)(f)(1), this Court has the authority
to this case to determine, inter alia, whether Petitioner intelligent-
ly and knowingly waived his right to debrief fully and truthfully
under a Rule 11 agreement and/or before the U.S. Probation Officer
that interviewd him in the presence of defense counsel; and if he did
not, that he be given opportunity and time to ameliorate the matter
before a new sentence is imposed.

The sentence that Petitioner received under the circumstances reflected
admittedly with little light in the record, affects the fairness,
integrity, or public reputation of judicial proceedings. Too much is
at stake to leave it to the conclusions of a U.S. Probation Officer
to determine in the course of a one-time interview based on Petitioner
answers in response to one or perhaps two-open-eneded questions, whe-
ther Petitioner was truthful and remorseful to merit accptance relief
without scrutinizing whether he was doing it knowingly and intelli-
gently with full assistance, advice and consent (or at least acknow-
ledgement)of counsel that he, Petitioner understood the consequences
or whether he understood that he could make his acceptance statement
in writing and with the support of a Sentencing Memorandum that was

secret and would be eventually placed under seal by the sentencing court.

But for defense counsel's ineffective assistance, Petitioner's substantial right to meaningful and effective sentencing strategy and delivery would not have been violated nor his right to a reasonable sentence prejudiced by the outcome--the imposition of a sentence that was 50 months longer than absolutely necessary.

## 4-WHETHER TRIAL COUNSEL FAILURE TO PROVIDE ADVICE AS TO AVAILABILITY OF AN AFFIRMATIVE DEFENSE OF ENTRAPMENT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

The failure to advise a criminal defendant of the availability of an affirmative defense when facts known to an attorney suggest that the defense may be meritorious does not constitute "reasonably effective assistance""when judged" "under prevailing professional norms." "Mitchell v. Scully,746 F.2d 951, 954 (2nd Cir. 1984)(quoting Strickland v. Washington,466 U.S. at 690, 104 S.Ct. at 2066)(see also United States v. Hansel,70 F.3d 6,8 (2nd Cir. 1995);Panucio v. kelly, 927 F.2d 106, 109 (2nd Cir. 1991). In Unites States v. Purdy,208 F.3d 41, 44-45 (2nd Cir. 2000),the Second Circuit set forth the obligation of counsel in advising a client as to whether he should accept a plea offer as follows:

> ...defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty. [cite omitted]. As part of this advice, counsel must communicate to the defendant the terms of the plea offer, [cite omitted]and should usually inform the defendant of the strengths

and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. [cite omitted]. On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. [cite omitted]. And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer. [cite omitted].

In this case, Petitioner should have been advised before agreeing to a plea that Petitioner had available to the Petitioner the affirmative defense of entrapment. The entrapment defense has two elements: "(1)government inducement of the crime, and (2)lack of predisposition on the defendant's part". United States v. Bala,236 F.3d 87, 94 (2nd Cir. 2000)(internal quotation marks omitted). A defendant arguing entrapment bears the burden of producing "credible evidence of government inducement." Id. If the defendant satisfies his burden, the government must prove beyond a reasonable doubt "predisposition on the defendant's part."Id. "Predisposition may be shown by evidence of: (1)an existing course of criminal conduct similar to the crime for which the defendant is charged, (2)an already formed design on the part of the accused to commit the crime for which he is charged, or (3)a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." Jacobson v. United States,503 U.S. 540, 112 S.Ct. 1535 (1992)(Where Government has induced individual to break the law anddefense of entrapment is at issue, porsecutor must prove beyond reasonable doubt that defendant

was disposed to commit the criminal act prior to first being approach-
ed by government agents);see also <u>United States v. Brunshtein</u>,344
F.3d 91, 101-02 (2nd Cir. 2003)(internal quotation marks and punct-
uation omitted).

Applying these principles to Petitioner case, it appears that based on
C.I.'s conduct in threatening and pressuring Petitioner to engage in
a drug transaction with an undercover DEA Agent while acting as a
Government agent himself (i.e., a Confidential Informant)is consti-
tutes government inducement. As to lack of predisposition, Petitioner
appear before the court as a first offender (even assuming you were
arrested in the past for dealing drugs). At the time of the conduct,
there was no evidence other that Petitioner were a drug dealer other
than the tape recorded conversations. Although the tape recorded
conversations indicate that Petitioner had the knowledge or contacts
to complete a drug transaction, the single transaction with C.I.'s
behest, is the only tranasction that the Government, can point to.
Therefore, there is every reason to beleive that the Government, re-
lying only on the tape recorded conversations may not have been able
to sustain their burden to prove an existing course of conduct beyond
a reasonable doubt. Finally, the argument that Petitioner "willingness"
to engage in the transaction is evidence of prospensity is undermined
by the fact that you acted under induced.

While not a complete defense, the induce defense, like the defense of
necessity, may excuse conduct that would otherwise be punishable, but
the existence of induce normally does not controvert any of the elements
of the offense itself.

At the very least, trial counsel should have reviewed these defenses with Petitioner before encouraging or even permitting you to take a plea which had the potential and if fact did result in a very harsh sentence. In sum, Petitioner' attorneys had a duty to make sure Petitioner understtod the benefits and costs of that strategy, before Petitioner rejected the option of going to trial. The failure to do so constituted ineffective assistance of counsel.

## 5-INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MY SIXTH AMENDMENT RIGHTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA. DEFENSE COUNSEL, WAS INEFFECTIVE AT MY SENTENCING HEARING FOR FAILING TO ARGUE THAT THE FACTORS ENUMERATED UNDER TITLE 18 U.S.C.§3553(a), QUALIFIED ME FOR A DOWNWARD DEPARTURE BASED UPON THE MORE ONEROUS CONDITIONS THAT ALINES; LIKE MYSELF, RECEIVE IN PRISON UNLIKE AMRERICAN CITIZENS AND POST CONVICTION REHABILITATION HAS FINALLY BEEN CLARIFIED....IN PEPPER V. UNITED STATES.

Defense Counsel was ineffective at my Sentencing Hearing for failing to argue that the factors enumerated under Title 18 U.S.C.§3553(a), qualified me for a downward departure based upon the more onerous conditions that Aliens; like myself, receive in prison, unlike Americcan Citizens. Those onerous conditions include, but are not limited to: (1)I cannot receive 12 off of my sentence; unlike American citizens, for participating in the Federal Bureau of Prisons' 500 Hour Drug & Alcohol Program, even though I qualify, solely because of my alienage; (2)I cannot receive 10% percent off of my sentence; unlike American citizens, for Halfway House placement, and, (3)I am being housed in a higher security prison; unlike American citizens, based on the same conduct.

To begin with, I submit that as a matter of pre-Booker law, the Federal Reporter's were replete with demonstrative case precedent on this issue, as well as other alien disparate treatment cases. Surely these cases were within the requiste knowledge of all practicing criminal defense attorneys. See, e.g., United States v. Bakeas, 987 F. Supp. 44 (D.Mass. 1997)(Alien ineligible for basic programs and mini-mum security, basis for 12 month departure); United States v. Farouil, 124 F.3d 838 (7th Cir. 1997)(Alien downward departure based on ine-ligibility for home confinement, community confinement, work release, intermittent incarceration, or minimum security); United States v. Guzman, 236 F.3d 830 (7th Cir. 2001)("[O]ur court, and likewise the D.C. Circuit, have held...[t[hat the defendant's status as deportable alien is relevant...in so far as it may lead to conditions of confine-ment, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated[.]"); United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994)(holding "[w]e conclude that a downward departure may be appropriate whwere the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence[.]").

Moreover, I respectfully submit that in light of the the United States v. Booker, 543 U.S. 220, 160 L.Ed.2d 621, 125 S.Ct. 738 (2005), decision being applicable to me at my Sentencing Hearing, my attorney was further ineffective for failing to noyice the Court that the fact-ors set forth in Title 18 U.S.C.§3553(a) thru (f)were surely availa-ble to me as well. This is specially true where Title 18 U.S.C.§ 3553(a)(6) expressly sets forth "[t]he need to avoid unwarranted sentence disparities among defendants with similar records who have

been found guilty of similar conduct[.]" **Id.** Title 18 U.S.C.§3553(a)(6), 2001 Edtion.

For exmaple, in a post-Booker world, and consistent with the pre-requisites set forth under Section 3553(a)(6), court's forth above. In **United States v. Ramirez-Ramirez**,365 F.supp.2d 728, 731-32 (E.D.Va. 2005), the court held that an alien who pled guilty and whose sentencing guidelines range was to 57 to 71 months, was entiltled to a downward departure to a sentence of 24 months under Title 18 U.S.C.§3553(a)(6). **Id.**

Specifically, with regards to aliens, the Court found that to avoid unwarranted sentence disparities between other offenders, it must be take into consideration: 1)that an alien is "[i]neligible for early release to a community correction facility[,]" (halfway house)pursuant to the "[B]ureau of Prisons Program Statement 5100.07[;]", 2)an alien is precluded "[f]rom [1 year]early release upon completion of the intesive drug treatment program[,]" pursuant to "28 C.F.R.§§524.31(a)(4), 550.58(a)(i)[;]", 3)"[a]s a deportable alien, he must be housed in at least a low security prison, rather thata minimum security 'camp' facility regardless of his cooperation or lack of prior eveidence of violance[;]", 4)thedisparity between alien alien sentences for "[f]ast track" programs between "[j]udicial district along the south-west" United States and Virginia; 5)the alien's prior conviction was less serious than the government contended; and 6)the 24 month sentence was appropriate because "[t]he [alien]will be released to the custody of the Department of Homeland Security ('DHS') for removal from the United States. Release into DHS can, and generally does, mean a further term of detention until his removal has been complted." **Id.**

-55-

Other court's as well. See **United States v. Jose Galvez-Barrios**,355 F.Supp.2d 958, 960 (E.D.Wis. 2005)(holding in light of Booker and Title 18 U.S.C.§3553(a)(6), downward departure from "41-51 months under the guidelines" to a "24 month[]" sentence was appropriate based upon alien sentencing disparities);**United States v. Salazar-Hernandez,** 431 F.Supp.2d 931, 934 & 936 (E.D.Wis. 2006)(court departed from "[a] term of 41-51 months" to "33 months" inter alia, for fast-track pro-gram disparities and "imminent deportation.");**United States v. Santos,** 406 F.Supp.2d 320 (S.D.N.Y. 2005)(same conclusion);**United States v. Medrano-Duran**,386 F.Supp.2d 943, 947 (N.D. Ill. 2005)(reducing aline's sentence from "fifty-seven to seventy-one months" sentencing exposure to "forty-one months of imprisonment" because [there is nothing in §3553(a)(6)that allows Congress and prosecutors to determine what sentence disparities are warranted and unwarranted but prevents a court from doing so. ").

In light of this prevailing case precedent, my attorney was further derelict in his responsibilities for failing to argue that, but for my alienage, I would have otherwise been entitled to receive up to one year off of my sentence for participation in the Bureau of Prisons' Drug & Alcohol Program as a statutory right under Title 18 U.S.C.§ 3621(e)(2)(B). There, the statute explicitly provides that "every prisoner" not just American prisoners, "with a substance abuse problem have an opportunity to participate" in the program and receive up to one year [off]from the term the prisoner must otherwise serve." Id. Title 18 U.S.C.§3621(e)(1) and (e)(2)(B)(respectively)(2001 Edition).

Indeed, this is not some novel contention. Various courts have complained for years about the Federal Bureau of Prisons, in that they have long

been enforcing a "No Alien Entitlement" policy, <u>sub silentio</u>. For example, this policy clearly caused the <u>Bakeas</u> court to exclaim:"the Bureau of Prisons policy raises grave concerns. Should a state have adopted the Bureau of Prisons' policy of assigning aliens to more restrictive conditions of confinement solely by reason of their alienage, it might not survive scrutiny under the Fourteenth Amendment...The federal policy may also violate this nation's commitments under the International Covenant on Civil and Political Rights...[t]o which we became a party in 1992. Article 2 expressly prohibits discrimination on the basis od 'status', including alienage--a prohibition that, ironically, the United States was instrumental in including in the Convention's initial drafts." <u>Id. Bakeas</u>, at 46 n.4.

Based on all of the foregoing, I therefore respectfully submit that "cause" under <u>Strickland's</u> two prong analysis vest in my case for my attorney's failure to know the law. See <u>Strickland v. Washington</u>,466 U.S. 668 (1984). In other words, there can be no strategic choice for my attorney's failure to raise a clearly meritorious argument on the more onerous conditions of confinement I must receive in federal prison, solely based upon my "status" as an alien. This is true, either through the disparate sentencing process itself, e.g.,fast-track alien programs, or as a matter of <u>pre-Booker</u>, and <u>post-Booker</u> law, consistent with the prerequisites of Title 18 U.S.C.§3553(a) thru (f), or as a statutory interpretation under Title 18 U.S.C.§§3621(e)(1) and (e)(2).

I further submit that "prejudice" vests as well in my case under <u>Strickland's</u> analysis, where I would otherwise be serving less prison time than I am currently serving,but for, my attorney's failure to argue the above issues. Seee, e.g., <u>Glover v. United States</u>,531 U.S.

198, 148 L.Ed.2d 604, 121 S.Ct. 696 (2001)(holding that any additional amount of jail time manifests prejudice under __Strickland's__ analysis for an attorney's failure to know the law).

MOTION FOR REHABILITATION

__Pepper v. United States__,Certiorari to the United States Court of Appeals for the Eight Circuit. No.09-6822. Argued December 6, 2010 Decided March 2, 2011

In Pepper II, the Eight Circuit again reversed and remanded for resentencing, concluding that Pepper's postsentencing rehabilitation could not be considered as a factor supporting a downward variance, and directing that the case be assigned to a different district judge. After this Court vacated and remanded the Pepper II judgment in light of __Gall v. United States__,552 U.S. 38, the Eight Circuit, in PepperIII, reversed and remanded once more. At the second resentencing hearing, Pepper informed the new district judge that he was still in school, was about to be promoted at his job, and had married and was supporting his new family. It also rejected his claim that the law of the case from Pepper II and Pepper III required the District Court to reduce the applicable Guidelines range by at least 40 percent.

Held:

1.When a defendant's sentence has been set aside on appeal, a district cout at resentencing may consider evidence of the defendant's postsentencing rehabilitation, and such evidence may, in appropriate cases,  support a downward variance from the now-advisory Guidelines range. Pp. 9-27.

(a)Consistent with the principle that "the punishment should fit the offender and not merely the crime," __Williams v. New York__,337 U.S. 241, 247, this Court has observed a consistent and uniform policy "under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed withing limits fixed by the law," id., at 246, particulary "the fullest information possible concerning the defendant's life and characteristics," id., at 247. That principle is codified at 18 U.S.C.§3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's]background, character, and conduct," and at §3553(a), which specifies that sentencing courts must consider, among other things, a defendant's "history and charact- eristics,"§3553(a)(1). The Guidelines, which Booker made "effectively advisory," 543 U.S., at 245, "should be the starting point and the initial benchmark," but district courts may impose sentences within statutory limits based on appropriate consideration of all the §3553(a) factors, subject to appellate review for "reasonableness," __Gall v. United States__,552 U.S. 38, 49-51. This sentencing framework applies both at initial sentencing and at any subsequent resentencing after a sentence has been set aside on appeal. Pp. 9-12.

(b)Postsentencing rehabilitation evidence may support a downward variance from the advisory Guidelines range. The plain language of §3661 makes clear that there is "[n]o limitation...on...background, character, and conduct" information, and it makes no distinction be- tween an initial sentencing and a subsequent resentencing. In addtion, postsentencing rehabilitation evidence may be highly relevant to se-

veral §3553(a)factors that district courts are required to consider
at sentencing. The extensive evidence of Pepper's rehabilitation
since his initial sentencing is clearly relevant to the selection of
an appropriate sentence here. Most fundamentally, that evidence pro-
vides the most up-to-date picture of his "history and characteristics".
§3553(a)(1). At the time of his initial sentencing, he was unemployed
drug addict who was estranded from his family and sold drugs. By his
second resentencing, he had been drug-free for nearly five years, was
married and supporting a family. His postsentencing conduct also
 sheds light on the likehood that he will engage in future criminal
conduct, a central factor that sentencing courts must consider. See
§§3553(a)(2)(V)-(C). Pp. 12-15.

Movant/Petitioner consider that he qualify to consider this motion
postrehabilitation afore mentioned case above,because he has been re-
habilitated in his time in prison.

## CONCLUSION

The Petitioner herin contends that the conviction being challenged
herein prejudiced him because of the collateral consequences which
flowed from the state convictions. Specifically, the Petitioner's
federal sentence was significantly enhanced because of the prior
state convictions. In determing the sentencing guideline provisions
and/or criminal history category, the state conviction was material
and instrumental in the ascertaing of the Petitioner's sentencing
guideline range, and the Petitioner's subsequent sentence imposed.

The Petitioner if he can faactually support his claim, is suffering
collateral consequences in the nature of a due process violation if a
void state conviction was used to enhance a federal sentence.

Absent the inclusion of the invalid state conviction, the Petitioner's federal sentence may be significantly reduced, as he would be able to revisit his federal sentence upon the vacature of the state conviction by this Court.

Once the defendant raises the issue of the intelligent and voluntary waiver with respect to prior guilty plea(s), the burden is on the State to establish a valid waiver. As Boykin, mandates, a waiver cannot be presumed from a silent record, and there must be an affirmative showing that the plea was made intelligently and voluntarily. See Boykin, 395 U.S. at 245.

In concluding, the Petitioner asserts that the guilty plea(s) are invalid because they violated the due process clause of the Fourteenth Amendment, there was no meaninful waiver of his constitutional rights as required by Boykin, he entered the plea(s)without effective assistance or/or with competent counsel, there exist no factual innocence to the charges he was convicted of. Because the record is insufficient to establish that the guilty plea(s) challenged herein were knowingly, voluntarily, and intelligently made, the petition is due to be granted, vacating the convictions as constitutionally invalid. Alternatively, a evidentiary hearimg must be held.

And if the court finds that further fact finding is warranted, an evidentiary hearing should be granted to aid the court as may be necessary.

In <u>Kafo v. United States</u>,467 F.3d 1063 (7th Cir. 2006), the Court of Appeals teaches us that, in a case such as the defendant's, **an evidentiary hearing** must be held in this matter. The Court of Appeals

teaches us, in <u>Kafo v. United States</u>,467 F.3d 1063, 1067-68 (7th
Cir. 2006):

We review the district court's decision to deny an evidentiary hea-
ring for an abuse of discretion. <u>Bruce v. United States</u>,256 F.3d 592,
597 (7th Cir. 2001). The governing statute, 28 U.S.C.§2255, provides
in pertinent part:

> Unless the motion and the files and records of the case conclu-
> sively show that the prisoner is entitled to no relief, the court
> shall cause notice thereof to be served upon the United States
> Attorney, <u>grant a prompt hearing thereon</u>, determine the issues
> and make findingd of fact and conclusions of law with respect
> thereto.

(emphasis added). Petitioner have interpreted this provision as not
requiring an evidentiary hearing when a petitioner's allegations are
"vague, conclusory, or palpably incredible rather than detailed and
specific." <u>Bruce</u>,256 F.3d at 597 (internal citations and quotation
marks omitted). Conversely, Petitioner have held that a district court
<u>must</u> grant an evidentiary hearing when the petitioner "allegues fact
that, if proven, would entitle him to relief". <u>Id.</u> (internal citations
and quotation marks omitted)....Our insistence that a petition under
28 U.S.C.§2255 include an affidavit setting forth the specific basis
for relief is nothing more than our enforcement of Rule 2 of the <u>Rule</u>
<u>Governing Section 2255 Proceedings for the United States District Court</u>
There are salutary reasons for requiring observance of the affidavit
requirement....Before th[e] [extraordinary]remedy [of habeas corpus]
can be invoked, a district court must assure itself that a threshold
showing has been made that justifies the commitment of judicial re-

sources necessary to accomplish this delicate and demanding task. In this respect, the verification requirement serves to ensure that a petitioner can provide <u>some evidence</u> beyond conclusory and speculative allegations, even if that evidence is <u>his verfied statement alone</u>. [Emphasis added.]

In order for the defendant to gain an evidentiary hearing at habeas corpus in this matter. See: <u>Goodwin v. Johnson</u>,132 F.3d 162,177-85 (5th Cir. 1997)(evidentiary hearing when the Court of Appeals reverses the district court's denial of an evidentiary hearing on a Fifth Amendment claim, where the petitioner offered only his own affidavit to support his contention that he requested an attorney during police questioning).(cited in <u>Kafo v. United States</u>,467 F.3d 1063, 1068,n.8 (7th Cir.2006), in support of the <u>Kafo</u> court's holding that "an affidavit by the movant is sufficient to warrant a hearing--more evidence is not necessary." <u>Schotz v. United States</u>,Nos. 07-2198 and 07-2199, Nov. 26, 2007, 7th cir. ("The district court improperly denied Schotz an evidentiary hearing on his ineffective assistance of counsel aregument. Schotz...submitted an affidavit in support of his argument.. The district court determines that the claim failed becasue Schotz did not support his argument with additional evidence beyond his own allegations....[I]n such a circumstance, an affidavit by the movant is sufficient to warrant a hearing--more evidence is not necessary. See <u>Kafo</u>,467 F.3d at 1067-68, 1071....The district court was incorrect to require more of Schotz than his afidavit....").) <u>See also</u>: <u>Galbraith v. U.S.</u>,313 F.3d 1001, 1009-10 (7th Cir. 2002).

See e.g., <u>United States</u>,887 F.2d 643, 645 (5th Cir. 1989)(holding an evidentiary is warranted requiring "[f]actual determinations....[to]

be made by the district court" when they involve "[s]pecific factual allegations, not directly contradicted in the record[.]")(citations omitted).

WHEREFORE, the Petitioner herein prays that the Court grant relief to which the Petitioner may be entitled in this proceedings.

Respectfully Submitted,

Angel Balbuena
Reg. No:78754-004
Pro-Se
FCI Big Springs
1900 Simler Ave.
Big Springs, Tx 79720

At Big Springs, Texas dated 30th MArch 2011

-64-

## CERTIFICATE OF SERVICE

I, Angel Balbuena , hereby certify, under penalty of perjury, that I have served a true and accurate copy of the foregoing instrument, "MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT 28 U.S.C. SECTION §2255., which is deemed filed at the time it was delivered to prison authorities for forwarding, Houston v. Lock, 487 U.S. 266(1988), upon the respondent and its attorney(s) of record by placing same in a sealed first class envelope, postage prepaid, addressed to:

Clerk: Clarance Maddox
United States District Court
Southern District of Florida
Miami Division
Federal Courthouse Sq.
301 N. Miami Ave. Ste. 150
Miami, FL 33128-7788

Danielle Sylvester-Pierre
U.S. Probation Officer
400 North Miami Ave. 9th Floor
Miami, FL 33128

Assistant U.S. Attorney
Scott M. Edenfield
99 NE 4th Stree
Miami, FL 33132

Defense Counsel
Vicent Peter Farina, AFPD
150 West Flagler Street
Suite 1500
Miami, FL 33130

and deposited into this institution's internal mail system located at F.C.I. Big Springs, 1900 Simler Avenue, Big Spring, Texas, 79729, on this 30th day of March, 2011

Angel Balbuena
Petitioner Pro-Se