ANGEL BALBUENA,            :

         Movant,           :

v.                         :                    REPORT OF
                                           MAGISTRATE JUDGE
UNITED STATES OF AMERICA,  :

         Respondent.       :
_____

## I    INTRODUCTION

This matter is before this Court upon a timely pro se motion
to vacate pursuant to 28 U.S.C. §2255, filed by Angel Balbuena,
attacking the convictions and sentences which were imposed
following entry of a guilty plea to all 3 counts of the Indictment
against him in Case 07-20487-Cr-Cooke.

This Cause was referred to the undersigned for consideration
and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10
of the Rules Governing Section 2255 Proceedings for the United
States District Courts.

The Court has for its consideration the §2255 motion (Cv:DE1),
with supporting Exhibits (Cv:DE1-1) and Memorandum (Cv:DE4); Mov-
ant's Affidavit (Cv:DE9) and Addendum thereto (Cv:DE10) with Exhib-
its (Cv:DE12); Respondent/Government's Response (Cv:DE14) with Ex-
hibits (Cv:DE14-1 to 14-6); Movant's Reply (Cv:DE15) with Affidavit
(Cv:DE16), Exhibits (Cv:DE17), and Addendum thereto (Cv:DE18); the
PSI, the Addendum thereto, and the Court's Statement of Reasons;
and all pertinent portions of the underlying criminal file.

The Movant Balbuena raises 5 Grounds for relief, which he
frames, as follows, *verbatim*:

1.  Whether trial counsel failure to ensure that the defendant understood whether trial counsel failure to ensure that the defendant understood the nature and consequences of the plea constituted ineffective assistance of counsel; where the same counsel when he quit the case, admitted that was his error and ineficience [sic] which conducted to that Movant accept the plea.

    (See Cv:DE1, p.4; Cv:DE4, p.9)

2.  Whether trial counsel failure to object to the application of two [2] Levels for obstruction of justice pursuant to U.S.S.G. §3C1.1 when was applied of manner consecutive; if prior conference to plea hearing the District Court and U.S. Attorney had promised that these levels will be applied of manner concurrent.

    (See Cv:DE1, p.5; Cv:DE4, pp.9-10)

3.  Whether trial counsel's failure to file objections to the PSR, regarding to criminal history category and is inconsistent when file objections to drug quantity; if he in the same advice and permit that Movant/Petitioner be plea guilty to a drug quantity that movant never admits and after the object to the PSR.

    (See Cv:DE1, p.7; Cv:DE4, p.10)

4.  Whether trial counsel failure to provide advice as to the availability of an affirmative defense of entrapment constituted ineffective assistance of counsel.

    (See Cv:DE1, p.8; Cv:DE4, p.10)

5.  Ineffective assistance of counsel in violation of my Sixth Amendment rights to the Constitution of the United States of America. Defense counsel was ineffective at my sentencing hearing for failing to argue that the factors enumerated under Title 18 U.S.C. §3553(a), qualified me for a downward departure based upon the more onerous conditions that [aliens]; like myself, receive in prison unlike American citizens and postconviction rehabilitation has finally been clarified....in Pepper v. United States.

    (See Memo at Cv:DE4, p.51).

## II  BACKGROUND, AND PROCEDURAL HISTORY

Movant Balbuena was named in a 3-count Indictment on 6/21/2007 charging violations of 21 U.S.C. §§841(a)(1) and 846. He was charged with: <u>Count 1</u>, attempted possession with intent to distribute 13 kilograms of cocaine, in violation of §§841(a)(1) and 846, and §841(b)(1)(A); <u>Count 2</u>, intent to distribute more than 500 grams of cocaine, in violation of §§841(a)(1) and 846, and in violation of §841(b)(1)(1)(A) [sic][1]; and <u>Count 3</u>, possession with intent to distribute a mixture and substance containing a detectible amount of marijuana, in violation of §§841(a)(1) and 846, and in violation of §841(b)(1)(C) [sic][2].

Balbuena was released on bond pending trial (Cr:DEs 8 to 12); and Assistant Federal Public Defender Vincent Peter Farina was appointed to represent him (Cr:DE13).

A 10/1/07 trial date was set. Then, on 9/27/07, a change of plea was set to be heard on 10/3/07 (Notice, Cr:DE22), but was con-tinued to 10/11/07 (Cr:DE24). When Balbuena failed to appear on 10/11/07, a warrant was issued for his arrest (Cr:DE25); on 3/12/08 he was arrested, and with an interpreter present, he had an initial appearance on the charge of failure to appear. (Cr:DE26).

A status conference was set (Notice, Cr:DE30), and was held on 4/30/08 (Cr:DE32). Movant, with an interpreter, was present with

---

[1]     As discussed at a 9/24/08 hearing held prior to sentencing (Transcript scanned at Cv:DE14-5 and Cr:DE57, at T/3), government counsel advised the Court that defense counsel [both Mr. Farina and Mr. Encinosa] had been informed that there was a typographical error in the Indictment, insofar as Count 2 referred to §841(b)(1)(A) but should have referenced §841(b)(1)(B). The scrivener's error, however, would not impact on the plea, because the sentence to be imposed would be driven/controlled by Count 1, and the sentence that was advised was higher than that which actually applies.

[2]     As reflected in the transcript of the same 9/24/08 hearing held before sentencing, government counsel advised the Court that Attorneys Farina and Encinosa had been told there was also a typographical error in the Indictment, insofar as Count 3 referred to §841(b)(1)(C) but should have referenced §841(b)(1)(D).

counsel (Id.), and a Change of Plea was set for 5/6/08. (Id.).

On 5/6/08, with an interpreter present, the Change of Plea hearing was convened and held (see Minutes, Cr:DE33; see Transcript filed at Cr:DE62, and Cv:DE1-1 Ex.4, and Cv:DE14-1). The following transpired. At commencement of the 5/6/08 hearing, when the Court asked Movant's counsel if he was ready to proceed (T/1), he responded, "not today," explaining he had been under the impression that Balbuena would not be charged with bond-jumping (related to his 10/11/07 failure to appear at the previously set Change of Plea hearing). Government counsel explained he could not guarantee that Balbuena would not be charged in a separate Indictment with bond-jumping. Discussion ensued between the Court, and government and defense counsel, in Balbuena's presence. The government was contemplating a superseding indictment, to include the bond-jumping; it was clarified that a sentence upon a bond-jumping conviction would likely run consecutive to any sentence on the drug charges pending against Balbuena, regardless of whether the bond-jumping was included in a superseding indictment in Case 07-20487-Cr-Cooke, or charged separately in another case. Defense counsel explained that although AUSA Edenfield had inquired as to whether approval might be granted to drop the bond-jumping, the U.S. Attorney's Office had not agreed, and indicated that they wanted him [Mr. Edenfield] to "supersede." The Court inquired, if, under the circumstances, it was not correct [since there had not yet been an Indictment on the bond-jumping matter] that Balbuena could plead to the existing Indictment, as it then stood, with the proceedings on the existing [drug] charges in Case 07-20487-Cr-Cooke going forward before Judge Cooke, and that the bond-jumping matter, if separately charged, would likely be assigned to a different judge. (T/2-3). At that juncture, Defense counsel requested and was granted permission to consult with Balbuena, he did so, and then announced that Balbuena "will plead today." (T/3).

Before the plea colloquy and change of plea hearing proceeded,

4

Balbuena was sworn through the Spanish interpreter, and affirmed that he was going to tell the truth, and understood he was under oath and that if he lied to the Court he could be subject to charges of perjury for making a false statement. (Cr:DE62, T/3-4). The Court conducted a complete and thorough Rule 11 colloquy, inquiring about Balbuena's place of birth, citizenship, age, and education. Balbuena stated he had no history of treatment for alcohol or substance abuse, and was only taking Albuterol for asthma. (T/4-5). During the colloquy/hearing Balbuena affirmed that he had had an opportunity to discuss with counsel the decision whether to plead or go to trial, and had discussed what might happen if he went to trial. Balbuena affirmed that he was satisfied with the representation attorney Farina had provided. When further questioned, he stated there was nothing concerning counsel's representation about which he was not satisfied. (T/5). Balbuena stated he was pleading guilty after discussing his case with counsel, because he believed it was the best thing for him to do. (T/5). The Court informed Balbuena of the nature of the pending charges, and the potential statutory maximum penalties that might be imposed for the counts to which he would be pleading (life, 40 years, and 20 years, respectively, for Counts 1, 2, and 3), and Balbuena said he understood. Balbuena affirmatively stated he had discussed the guidelines with his attorney; and the Court gave explanation to him about the guidelines. Balbuena affirmed his understanding that any estimate of what sentence might actually be imposed was just that, an estimate, and that the court would not know what sentence it would impose until after a PSI Report was ordered and prepared. (T/6-7). The court explained, and Balbuena said he understood, that under certain circumstances, either side might appeal, for example, if the Court sentenced him above the guidelines he might appeal, and if the Court sentenced him below the guidelines the government might appeal. The Court confirmed with counsel that there was no plea agreement in the case; and Balbuena was asked and affirmed on the record that no one had threatened him to make him plead, or

told him anything bad other than explaining the criminal charges themselves and what might happen if he did not plead guilty. Balbuena further affirmed his understanding that by pleading guilty he would be giving up certain rights [including the rights to vote, hold office, be a juror, and possess a firearm]. He also stated his understanding that conviction could affect his ability to stay in the United States; and said he understood that by pleading guilty he would be giving up other important rights [including the right to a trial at which he could decide to remain silent and not testify unless he chose to; the right to be presumed innocent and proved guilty beyond a reasonable doubt; the right, with assistance of counsel to see, hear, and cross-examine witnesses against him, and to compel witnesses to appear and testify on his behalf. (T/8-9).

The government was asked what it would have been prepared to prove had the matter proceeded to trial (Cr:DE62, T/9). The government read its proffer on the record; and Balbuena along with his attorney raised an objection regarding the drug quantity involved. That portion of the plea transcript read as follows:

[AUSA]:       Your Honor, had this case proceeded to trial, the United States would have proven the following beyond a reasonable doubt. Beginning on Monday, June 4, 2007, agents of the DEA and a confidential source placed several recorded calls to Angel Balbuena. During the conversations, Balbuena negotiated with the confidential source to obtain over ten kilograms of cocaine. In a June 6, 2007 recorded call, Balbuena informed the confidential source that he had gathered enough money to purchase over ten kilograms of cocaine.

In a June 7, 2007 recorded call, Balbuena and the confidential source agreed to meet to consummate the transaction on that date.

On June 7, 2007, Balbuena met with the confidential source and an undercover agent of DEA in the parking lot of a Home Depot store located in Miami-Dade County. Balbuena told the confidential source that he had brought $100,000 with him and that the rest of the money

was located at his home. Balbuena showed the confidential source a cardboard Sprite box containing what was later determined to be over $66,000 in United States currency. Balbuena then asked to see the cocaine.

The confidential source opened the rear bed of the undercover vehicle to expose a large duffel bag containing 13 brick shaped objects wrapped in duct tape to simulate kilograms of cocaine. Balbuena asked the undercover agent whether he was crazy to show the drugs out in the open. At this time, Balbuena was placed under arrest. A search of Balbuena's vehicle at the time of his arrest revealed clear plastic bags containing smaller baggies of a white substance. Laboratory analysis later revealed that the substance was cocaine with a net weight of 23.1 grams. A search of Balbuena's home located in Miami-Dade County on the same date recovered thousands of plastic baggies, approximately 1265 grams of marijuana and 812 grams of cocaine, a digital scale and a machine used to press cocaine into kilogram size blocks.

[COURT]:        Sir, do you agree with the factual basis as read by the prosecutor?

[BALBUENA]:     Well, there is one thing there that I did not do.

[COURT]:        What is that, sir?

[COUNSEL]:      Your Honor, I am concerned about the quantity of drugs that was actually negotiated. It was three kilos instead of ten. The agents told them they had ten kilos if he wanted to buy them. He only brought in three. That is a discrepancy in the quantity.

(Cr:DE62, Change of Plea, T/9-11). After brief commentary by the Government, defense counsel asked the Court's permission to take a moment, with the Court Interpreter, to consult with his client Balbuena. (T/11). The Court granted the request (Id.), and the transcript reflects the following exchange:

[COUNSEL]: We are prepared to go forward, Your Honor. Thank you.

[COURT}:   Sir, do you accept the factual basis as read by the prosecutor?
[BALBUENA]: Yes.

7

```
[Court]:      How do you plead to the charges set forth in Counts
              1, 2 and 3 of the indictment, guilty or not guilty?

[BALBUENA]:   Guilty.
```

(Change of Plea, T/11-12). The Court, having considered the
parties' stated positions, and Balbuena's statements made under
oath, found Balbuena to be "fully competent and capable of entering
into an informed plea;" and found "[h]e is aware of the nature of
the charges and the consequences of the plea and that the plea of
guilty is knowing and voluntary, supported by an independent basis
in fact containing each of the essential elements of the offense."
(<u>Id.</u>, T/12). Accordingly, on 5/6/08 the Court accepted Balbuena's
plea, adjudicated him guilty of the offenses in Counts 1-3 of the
Indictment, (T/12), and set sentencing for 7/9/08 (T/12).

The PSI was prepared, and mailed to the government and defense
counsel on 6/16/08. On 6/30/08 Attorney Farina filed Objections to
the PSI on Balbuena's behalf (Cr:DE35), objecting to the "Offense
Level Computation" based on 13 kilograms of cocaine with a
corresponding Base Offense Level of 32. In the objection, it was
defendant's argument that while there was discussion of an
additional 10 kilograms of cocaine, that discussion was created and
supported by the CI, that defendant was not charged with conspiracy
with an attempt to possess drugs, that the officers offered "10
plus kilograms of sham cocaine," and that Balbuena therefore should
be held responsible only for the quantity of cocaine that he
desired to purchase, i.e., 3 kilograms. Attorney Farina further
objected on Balbuena's behalf that, while the PSI recommended
imposition of a 2-level upward adjustment for Obstruction of
Justice under USSG §3C1.1, and recommended denial of downward
adjustment for acceptance of responsibility under 3E1.1, it was
Balbuena's assertion that the 3C1.1 Obstruction adjustment should
not be imposed, and that he should be granted credits (downward
adjustments) under 3E1.1 because, in addition to cooperating with

police, he had "plead guilty to all charges against him without the benefit of a plea agreement and acknowledging his acceptance of responsibility." (PSI Objections, Cr:DE35)

Then, on 7/3/08, Balbuena sent the Court a *pro se* letter expressing a desire to withdraw his guilty plea, and dissatisfaction with attorney Farina. (Cr:DE36). A hearing was held before the Honorable Marcia G. Cooke, United States District Judge on 7/9/08, the sentencing was not held as scheduled; an *ore tenus* motion by defense attorney Farina, to withdraw from the case, was granted (<u>see</u> 7/9/08 Hearing Transcript, Cv:DE12, Ex.8; Cv:DE14-3); the matter was continued until 8/20/08 (Minutes, Cr:DE37); the Status Conference was rescheduled to 8/21/08, and a new Status Conference was scheduled for 8/26/08 (8/21/08 Minutes, Cr:DE39).

At the 7/9/08 hearing on his Motion to Withdraw as Balbuena's counsel, Defense Attorney Farina said he should have moved to withdraw earlier, and said the main reason for his request was that the prospect of a conflict arose when his client Balbuena, who was on bond, failed to appear in Court on 10/11/07 which was the day his Change of Plea hearing was to have been conducted. AFPD Farina explained that [as had been discussed at the 5/6/08 Plea Hearing] initially it was anticipated the U.S. Attorney's Office might not pursue the bond-jumping charge, but then AUSA Edenfield had informed that he could not make such an assurance [and the question became whether a superseding Indictment would be filed to include both the three previously charged June 2007 drug offenses, and a new bond-jumping charge stemming from the October 2007 failure to appear, or whether prosecution of the drug offenses would go forward on the 6/21/07 Indictment, and the bond-jumping would be charged separately]. (Motion to Withdraw hearing, Cv:DE14-3 at T/2-3). As AFPD Farina explained, he felt he needed to withdraw, because as Balbuena's attorney he would be placed in conflict by the fact that as part of the process of Indictment of his client

9

for the bond-jumping he would be called to testify as a witness before the Grand Jury and state that he had advised his client Balbuena that he [Balbuena, who was on bond] had to appear in Court on 10/11/07 for his Change of Plea Hearing [and Balbuena instead absconded, and failed to appear]. (Cv:DE14-3, T/3). At the 7/9/08 hearing on his Motion to Withdraw, AFPD Farina [reflecting back on the 5/6/08 Change of Plea hearing] reminded the Court that on 5/6/08 he [Mr. Farina] had asked the Court for a few minutes to speak with his client Balbuena, the request was granted, and he had consulted with Balbuena. (<u>Id.</u>). In addition to the question of that conflict, AFPD Farina in requesting leave to withdraw, made an observation about that break during the 5/6/08 plea hearing, and his consultation with Balbuena about the decision whether or not to plead to the drug charges [in light of the not yet Indicted bond-jumping]. This stated observation by Mr. Farina was that:

> I discussed it with him. I think under the circumstances he
> felt a little bit rushed and pressured and he did go through
> the plea colloquy.

(Cv:DE14-3, T/3). In response to this statement by AFPD Farina [at the 7/9/08 Motion to Withdraw hearing], the Court observed that Balbuena [before the 5/6/08 Change of Plea hearing], had earlier proposed to change his plea to guilty, making that observation through its response to Mr. Farina, by stating: "But he was supposed to plead guilty on the day that he didn't show up. It's not like you rushed him into taking a plea that day." (<u>Id.</u>, T/3). [As noted above, Balbuena's intent to change his plea was of record as early 9/27/07, some 2 weeks before the 10/11/07 hearing he failed to attend, and more than 7 months before the 5/6/08 Change of Plea hearing at which Mr. Farina suggested Balbuena felt "a little bit rushed" in making his decision whether to go forward on entry of a guilty plea to the drug charges]. At the 7/9/08 hearing the government affirmed that it was still its intent to pursue a bond-jumping charge; the government and Mr. Farina also observed

that the matter of conflict was a bit larger than the prospect of Mr. Farina becoming a government witness against his own client, in that Balbuena had also sent the court his letter (Cr:DE36) voicing dissatisfaction with representation in his case. (Cv:DE14-3, T/4). The Court granted AFPD Farina's motion to withdraw, and announced that new defense counsel would be appointed (Id.).

On 8/25/08, through newly appointed counsel, Israel Jose Encinosa, Esquire, defendant Balbuena filed a Motion to Withdraw Plea. (Cr:DE40); on 8/26/08 the government filed a Response in opposition (Cr:DE41), and on 8/26/08 the Court held a hearing on the Motion to Withdraw Plea (Cr:DE74; Cv:DE14-4; Cv:DE17 pp.11-26).

In the written motion to withdraw his plea (Cr:DE40) Balbuena, through Attorney Encinsoa, argued that his plea to the count charging 13 kilograms of cocaine should be treated as not "knowing and voluntary," because he had asserted at the 5/6/08 hearing that he should be responsible only for 3 kilograms of cocaine because he had made it known at the 5/6/08 hearing that he did not intend to buy 13 kilograms, and only intended to purchase 3 kilograms. Mr. Encinosa in the 8/25/08 Motion further argued that this was supported by the fact that Balbuena had brought with him only enough money to purchase 3 kilograms [priced at $17,500 per kilo]. Mr. Encinosa further argued that he is fluent in Spanish, and that his interpretation of one recorded conversation involving his client was that Balbuena had said he "had money for three," and this may not have been grasped by former counsel [Mr. Farina] who is not fluent in Spanish.[3] Mr. Encinosa suggested that there had been "no close assistance attention of counsel" and Balbuena "was not fully represented," where the government did not translate the

_____

[3]     At the 8/26/08 hearing, Attorney Encinosa explained that the Spanish word "tres" meaning three, on a tape recording could easily be mistaken for the Spanish word for thirteen [i.e., trece] ("I do speak Spanish, and I can see my client's point where he is arguing "tres," three, sounds like thirteen if you stress the S a little bit?" (Cr:DE40 and Cv:DE14-4, at T/3).

recording into English, and Mr. Farina was not fluent in Spanish. Mr. Encinosa further argued that the search of Balbuena's house, which led to discovery of drugs charged in Counts 2 and 3 of the Indictment was not valid because "there was no consent given to law enforcement agents" (Cr:DE40, Motion at ¶7).

The Government's written Response (Cr:DE41), in opposition to the Motion to Withdraw Plea, argued that it was Balbuena who was in the best position to advise his attorney what amount of cocaine he intended to purchase. AUSA Edenfield at the 8/26/08 hearing reiterated this point, also noting that the government had not transcribed the tapes because the case had been "tracking towards a guilty plea." (Cr:DE41, T/7-8). The government further observed that although Balbuena first raised an objection regarding the drug amount referenced in the government's proffer, he then agreed to the proffer and stated he wanted to go forward with his guilty plea. [Here it is noted, as discussed above, that Balbuena's change of mind, and his decision to accept the factual proffer and decision to plead guilty was reached only after his consultation with counsel in which the Spanish court interpreter participated. See Cr:DE62 and Cv:DE14-1 at T/11-12]. Returning to the written Motion to Withdraw Guilty plea, in regard to Balbuena's assertion of an unlawful search, the government noted in its Response (Cr:DE41) [and later reiterated at the 8/26/08 hearing on the motion (Cr:DE74)], that the residential search had been made pursuant to a warrant. The government also argued at the 8/26/08 hearing that unlawful search argument could only apply to the drugs involved in Counts 2 and 3, and did not reflect upon the cocaine charged in Count 1 or the amount involved therein. (Cr:DE74 and Cv:DE14-4 at T/4-6). At the 8/26/08 hearing on the Motion to Withdraw Plea [Cr:DE74] the Court, having considered the factors established in United States v. Buckles, 843 F.2d 469 (11 Cir.

1988)[4] for determining whether a guilty plea may be withdrawn, made
a determination that the required elements had not been met, and
denied the Motion to Withdraw Guilty Plea. (Cr:DE74 and Cv:DE14-1
at T/8-11). In so ruling, the court found that Balbuena agreed to
the factual proffer that the cocaine quantity negotiated for was
"over ten kilograms," and decided to plead guilty, and that he had
done so with close assistance of counsel as his consultation with
counsel regarding those matters was with assistance of the Spanish
interpreter. The Court found that Balbuena had stated more than
once that he was satisfied with Mr. Farina's representation, and
said he was pleading guilty because he thought it was in his best
interest to do so. The court found that Balbuena's plea was knowing
and voluntary; and found that under the circumstances of Balbuena's
case, allowing withdrawal of his plea would not conserve judicial
resources. (Id.). The sentencing, which was not held when initially
scheduled, was reset for 9/24/08 (Id., T/12).

A 9/24/08 hearing was held, but the sentencing did not take
place (Minutes of 9/24/08 proceeding, Cr:DE44); and the sentencing
was rescheduled and conducted on 10/22/08 (9/24/08 Hearing
Transcript CR:DE46).

At the 9/24/08 hearing, the Court asked the new defense coun-
sel [Mr. Encinosa] if he had any concerns before the Court proceed-
ed with sentencing. Counsel said that he was going to rely upon
prior counsel's [Mr. Farina's] written PSI objections. Then, when

---

[4]     Under Rule 11(d)(2)(B), of the Federal Rules of Criminal Procedure,
the Defendant has the burden of showing a "fair and just reason for withdrawing
his plea." United States v. Buckles, 843 F.2d 469, 471 (11 Cir. 1988).  To
determine the whether the Defendant has provided a fair and just reason to
withdraw the plea, the Court must consider the totality of the circumstances
surrounding the plea. Id. The factors to be considered include: 1) whether there
was close assistance of counsel; 2) whether the Defendant's plea was knowing and
voluntary; 3) whether judicial resources would be conserved; and 4) whether the
government would be prejudiced if the Defendant were allowed to withdraw his
plea.  Id. at 472.

defendant Balbuena asked permission to address the Court on the record, his request was granted, and Balbuena again raised the issue that he had plead guilty, and that he was guilty of the cocaine offense in Count 1, not for the amount charged in the Indictment. Balbuena further argued that while he was in incarcerated he used lawbooks which told him that if there is "inefficient representation" a defendant can withdraw his plea, and it was his wish to withdraw his plea. Balbuena stated that "I would like to withdraw my guilty plea regarding that amount of drugs and start over again, and I thought that that was the reason why I got a different attorney...". (Cr:DE57, T/7-8). The Court explained to Balbuena that the mistake Attorney Farina had made was continuing to represent him after he [Balbuena] failed to appear for his 2007 plea colloquy. (Id., T/8). The Court asked if the government was prepared to offer proof of the drug quantity if the Court were to proceed directly to sentencing, and AUSA Edenfield informed that no case agent was present with him in court to testify. The Court cautioned defense counsel that by Balbuena contesting the amount of drugs being used to calculate the guideline sentence, it was possible that upon taking evidence to determine the exact drug amount to be relied upon, it was possible that it could turn out to be less than what was stated in the government's proffer, but also could turn out to be more. The Court ruled that sentencing in the matter would be further continued, until 10/22/08, to allow testimony about the drug quantity involved. (Id., T/8-10).

At the continued Sentencing Hearing held on 10/22/08 (Cr:DE61) the lead case agent, DEA Agent Jalisa Monzon appeared and testified that during several recorded phone conversations, between Balbuena and a CI, Balbuena agreed to purchase between 10 and 15 kilos of cocaine. Monzon testified that Balbuena was told by the CI that he would not sell less than 10 kilograms. Monzon testified that on one occasion Balbuena said he wanted to buy 3 kilograms of cocaine, but the CI said he would not sell that amount. Monzon testified that

Balbuena attended an arranged meeting for what was to be the purchase of 13 kilograms of cocaine, and told the informant he had $100,000.00, which was more than the amount needed to buy 3 kilos at the arranged meeting. Monzon testified that when Balbuena arrived at the arranged 6/7/07 meeting he had money with him in a Sprite container, and that when Balbuena was arrested and the money was seized and counted, there were approximately $54,291 dollars in it. Monzon testified that the CI showed Balbuena 13 kilos of sham cocaine, and Balbuena agreed to purchase it; that Balbuena said that a man named Carlos was going to provide the rest of the money needed to make the purchase, and that Balbuena said that Monzon and the CI were to follow him to his house to get the money. Monzon testified that Balbuena [at debriefing] had said 2 of the kilos were going to be for Balbuena himself, and that 11 of them were going to be for a man named Carlos; and that Balbuena [at debriefing] had said he brought only enough money to buy 3 kilos. (Cr:DE61 and Cv:DE14-6 at T/4-21). On Cross and Redirect examination, Monzon testified, when a CD of a recorded conversation was played, that Balbuena had said he had money for 13, the CS (confidential source) said that was perfect because that was what the CS had obtained and was bringing. (T/27). Monzon also testified that the drug quantity discussed and agreed upon had varied. Balbuena at one point had asked for 15 kilos, then said he needed only 3, and when told that they would not deal in 3 kilos at a time, an was told if he didn't want the 15 kilos the deal would not be made. Then, Balbuena continued to contact the informant, and the drug amount discussed went down to 10, back up to 15, and then down to 13 kilos. (T/31).

Balbuena took the stand at the sentencing hearing (Cr:DE61), and testified that he had lied during his debriefing, when he told agents that he had intended to purchase 13 kilograms on the day of his arrest. (Id., T/39). Balbuena insisted, based on his own testimony at the 10/22/08 Sentencing hearing, that he only wanted and only meant to get 3 kilos of cocaine (T/40); but he also

admitted that he had said that because the informant had said they weren't willing to sell anything less than 13, 14, or 15 kilos, and the informant kept talking about 10 or more kilos, he decided to go ahead and tell them "it was okay, 13, 14, whatever it was that he wanted." At the same time, Balbuena testified that he had taken with him only enough money for 3 kilos. (T/41).

At the end of the 10/22/08 sentencing hearing the Court having listened to the evidence [recorded conversation involving Balbuena; and testimony by Balbuena and the Agent] found that Balbuena's testimony was not credible; found that the evidence did not support his version of the facts; and determined for purposes of Count 1 that the government had met its burden of proving by a preponderance of the evidence that Balbuena intended to negotiate a deal for and purchase 13 kilograms of cocaine on the day of his arrest. (Cr:DE61, T/45-46). The Court found, as proven by a preponderance of the evidence, that as indicated in PSI ¶19, Balbuena was accountable for 13.785 kilograms of cocaine [and 776.9 grams of marijuana]. (T/46-47). Following argument by the government and defense counsel, the Court calculated the guidelines, and determined that Balbuena's Total Offense Level was 34, his Criminal History Category was II, and that his resulting advisory sentencing guidelines range was 168-210 months. The Court sentenced Balbuena within the Guidelines, and imposed concurrent terms of 170 months on Counts 1 and 2, and imposed a term of 60 months (5 years) imprisonment on Count 3. (T/47-53).

Balbuena took a direct appeal, arguing the District Court erred in denying his Motion to Withdraw his Plea for two reasons: 1) the Court did not advise him of the minimum mandatory; and 2) AFPD Farina did not know the contents of the conversations recorded in Spanish, particularly the conversation in which Balbuena said he had enough money for 3 kilograms of cocaine. Balbuena also asserted that there was double counting in calculation of his sentence,

arguing that it was impermissible to increase his offense level for obstruction of justice, but deny a reduction for acceptance of responsibility -- both based on his failure to appear at the initially scheduled change of plea hearing. The Court of Appeals *per curiam* affirmed in a 17 page Order. (<u>See</u> Cr:DE81, Order on Appeal, affirming Balbuena's convictions and sentences; <u>United States v. Balbuena</u>, No. 08-16120, 343 Fed.Appx. 510, 2009 WL 2707550 (11 Cir., Aug. 31, 2009)). Thereafter, Balbuena filed a petition for writ of *certiorari* with the United States Supreme Court. It was submitted on 11/27/09 (Cv:DE11, p.9), and the petition [Case 09-7826] was denied on 4/5/10 (<u>see</u> <u>Id.</u>; and <u>Balbuena v. United States</u>, 130 S.Ct. 2341 (2010)).

## III  <u>DISCUSSION</u>

As noted <u>supra</u>, Movant Balbuena's claims in this case are couched in terms of ineffective assistance.

In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995).

In the case of ineffective assistance during the punishment phase, prejudice is established if "there is a reasonable probability that but for trial counsel's errors the defendant's

non-capital sentence would have been significantly less harsh."
<u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5 Cir. 1993); <u>United States v.</u>
<u>Bartholomew</u>, 974 F.2d 39, 42 (5 Cir. 1992). A reasonable
probability is a probability sufficient to undermine confidence in
the outcome. <u>Strickland</u>, 466 U.S. at 694. The court need not
address both prongs of the Strickland standard if the complainant
has made an insufficient showing on one. <u>Id</u>. at 697. However, a
movant must establish that the sentence was increased due to
counsel's deficient performance. <u>Glover v. United States</u>, 531 U.S.
198, 203-204 (2001).

In the context of a case in which guilty pleas or the
equivalent were entered, application of the second prong of the
two-prong <u>Strickland</u> standard requires a showing that there is a
reasonable probability that but for counsel's errors, the defendant
would not have pleaded guilty and would have insisted on going to
trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

Moreover, review of counsel's conduct is to be highly defer-
ential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994),
and second-guessing of an attorney's performance is not permitted.
<u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts
should at the start presume effectiveness and should always avoid
second-guessing with the benefit of hindsight."); <u>Atkins v.</u>
<u>Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide
range" of performance is constitutionally acceptable, "the cases in
which habeas petitioners can properly prevail on the ground of
ineffective assistance of counsel are few and far between." <u>Rogers</u>
<u>v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994). Counsel has no duty to
raise claims or defenses which have little or no chance of success.
<u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S.Ct. 1411, 1418, n.2,
173 L.Ed.2d 251 (2009)(the law does not require counsel to raise
every available non-frivolous defense); <u>Chandler v. Moore</u>, 240 F.3d
907, 917 (11 Cir. 2001) (counsel is not ineffective for failing to

raise <u>non-meritorious</u> objection).


**<u>Ground 1</u>**

   In Ground 1, Balbuena argues counsel was ineffective for not
ensuring he understood the nature and consequences of his plea.

   This claim is clearly without merit.

   The Supreme Court has held that "the two-part <u>Strickland v.
Washington</u> test applies to challenges to guilty pleas based on
ineffective assistance of counsel." <u>Holmes v. United States</u>, 876
F.2d 1545, 1551 (11 Cir. 1989)(citing <u>Hill v. Lockhart</u>, 474 U.S.
52, 58 (1985)). The petitioner must not only show that counsel's
representation fell below the standard of reasonableness, but also
that he was prejudiced by counsel's unprofessional errors. <u>Id.</u>
(citing <u>Strickland</u>, at 694).

   Here, the record does not support a conclusion that Balbuena
would not have plead guilty, and instead would have gone to trial.
The Eleventh Circuit has held that a "petitioner's bare allegation
that he would not have pleaded guilty is insufficient to establish
prejudice under <u>Strickland</u>. <u>Roach v. Roberts</u>, No. 09-13006, 373
Fed.Appx. 983, 985, 2010 WL 1544635, at *2 (11 Cir., Apr. 20, 2010)
(citing <u>United States v. Campbell</u>, 778 F2d 764, 768 (11 Cir.
1985)).

   The law is clear that "solemn declarations in open court carry
a strong presumption of verity," forming a "formidable barrier in
any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431
U.S. 63, 73-74 (1977); <u>United States v. Rogers</u>, 848 F.2d 166, 168
(11 Cir.1988). The subsequent presentation of conclusory allega-
tions, unsupported by specifics, is subject to summary dismissal,

as are contentions which in the face of the record are wholly incredible. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

Based on the record demonstrated by Balbuena's plea colloquy, and the transcript of the hearing on Balbuena's Motion to Withdraw Guilty Plea, it is apparent that his guilty plea was not coerced, and was entered into by him knowingly, freely, and voluntarily, with full knowledge of the elements of the offense to which he was pleading guilty, and of the evidence proffered by the government which it was prepared to prove beyond a reasonable doubt if the case were to go to trial. Where a criminal defendant enters a knowing and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. <u>United States v. Broce</u>, 488 U.S. 563 (1989); <u>McMann v. Richardson</u>, 397 U.S. 759 (1970)(voluntary guilty plea waives all non-jurisdictional defects); <u>United States v. De La Garza</u>, 516 F.3d 1266, 1271 (11 Cir. 2008), quoting <u>Wilson v. United States</u>, 962 F.2d 996 (11 Cir. 1992)(claim of ineffective assistance of counsel relating to pre-plea issues waived by voluntary guilty plea); <u>United States v. Smallwood</u>, 920 F.2d 1231, 1240 (5 Cir. 1991)(a defendant's waiver of all non-jurisdictional defects as a result of a voluntary guilty plea, "includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary").

There is nothing showing that Balbuena's attorney, Vincent Farina, provided ineffective assistance with regard to the entry of his client Balbuena's plea. It is apparent if Balbuena had gone to trial, and had been convicted on all counts, that his potential sentencing exposure was even greater than what he received upon pleading with counsel's assistance; and a sentence after a conviction following a jury trial may not have been imposed near the bottom of the guidelines, as was Balbuena's sentence following his plea and unsuccessful attempt to withdraw it.

In sum, Movant Balbuena cannot prevail on his claim of inef-
fective assistance, having failed to allege and demonstrate that he
would not have plead guilty but for alleged error by his attorney,
and having failed to demonstrate either that counsel' representa-
tion fell below the objective standard of reasonableness, or that
he suffered prejudice as a result of counsel's representation.

**Ground 2**

In Ground 2, Balbuena argues that counsel was ineffective for
failing to object to application of the 2-level increase for
Obstruction of Justice during calculation of his Offense Level.

In fact, Attorney Farina in written objections to the PSI
[later adopted by successor counsel Encinosa] did challenge imposi-
tion of the Section 3C1.1 Obstruction of Justice increase, but he
did so arguing that the increase should not be imposed combined
with denial of a reduction in the Base Offense Level for acceptance
of responsibility, where Balbuena had plead guilty. [For reasons
stated in the Eleventh Circuit's opinion affirming Balbuena's
convictions and sentences, the double-counting argument failed].

In the 2007 USSG Manual, as provided by Application Note 4(e)
for an Obstruction of Justice enhancement under §3C1.1, "examples
of covered conduct" include: "escaping or attempting to escape from
custody before trial or sentencing; or <u>willfully failing to appear,
as ordered, for a judicial proceeding</u>...". (emphasis added).

Thus, even if Attorney Farina had filed an objection to a
§3C1.1 Obstruction of Justice enhancement, without linking it to
denial of an acceptance of responsibility reduction, couched in
terms of impermissible double counting, the enhancement for failing
to appear at a judicial proceeding [in Balbuena's case, a scheduled
Change of Plea hearing] would have been be proper under the guide-
lines. *Cf* <u>United States v. Balbuena</u>, 343 Fed.Appx. at 517, 2009 WL

2707550, at *6 (under Application Note 4(e), a §3C1.1 enhancement applies for "willfully failing to appear, as ordered, for a judicial proceeding"); United States v. Ortiz, No. 06-10760, 194 Fed. Appx. 895, 2006 WL 2597831, at *1 (Sept. 12, 2006)(under Application Note 4(e), a §3C1.1 enhancement for Ortiz' failure to appear for arraignment was properly applied).

Here, neither of Balbuena's attorneys [Farina or Encinosa] could be deemed ineffective for failure to raise an objection or motion that was without merit, or had little or no chance of success. It follows that Balbuena cannot show resulting prejudice.

## Ground 3

In Ground 3, Balbuena argues that counsel was ineffective for failing to object to the Court assigning him Criminal History Category II, based on three criminal history points for prior offenses set out in ¶¶30, 31 and 38 of the PSI (respectively, a DUI, operating a Chop Shop, and Resisting an Officer Without Violence).

A DUI, although a misdemeanor, counts for purposes of determining a defendant's Criminal History Category, through assignment of 1 Criminal History point. United States v. Erland, No. 08-17148, 352 Fed.Appx. 363, 365, 2009 WL 3738493, at *2 (11 Cir., Nov. 10, 2009)(assignment of 1 Criminal History Point for DUI was appropriate even where less than a 60 day sentence was imposed); United States v. Wilson 901 F.2d 1000, 1002 (11 Cir. 1990)(while minor traffic violations are excluded from factors a court may consider in criminal history calculations, a DUI conviction is not deemed a minor traffic infraction, within the meaning of USSG §4A1.2(c)); See USSG §4A1.2.(c). The 1 Criminal History point for operating a Chop Shop was appropriate, as the offense was a felony offense [Third Degree]. Those two offenses alone, each contributing 1 Criminal History Point towards Balbuena's Criminal History Category calculation, sufficed for Criminal History

Category II to be assigned to Balbuena, where CH Category I applies for 0 or 1 criminal history point, and 2 or 3 Criminal History Points result in assignment of CH Category II.  Thus, even without the third criminal history point for Resisting Without Violence, Balbuena's Criminal History category would have properly been CH Category II.[5]

In Ground 2, Balbuena also argues that it was inconsistent for defense counsel to permit him to enter a guilty plea to Count 1, but at the same time object to the drug quantity in the PSI.  Here, there was no inconsistency, because the Guidelines are not mandatory; and while on one hand, Balbuena after consultation with counsel proceeded with his plea colloquy, and pleaded guilty after agreeing to the Government's stipulation that 13 kilos of cocaine had been involved in Count 1, the court theoretically, upon consideration of counsel's objections to the PSI and evidence relating thereto, could possibly have found that Balbuena actually intended to purchase 3 kilograms [or some other quantity less than 13 kilograms] and could have imposed a lesser sentence.

In sum, Counsel was neither ineffective for failing to object to a properly calculated Criminal History Category of II, or for filing a PSI objection to the drug quantity when Balbuena at the same time had plead guilty based on the drug quantity objected to in the PSI.

## Ground 4

Balbuena argues that counsel was ineffective for not pursuing

_____

[5]     It appears that assignment of 1 criminal history point for resisting an officer without violence was appropriate, where the sentence imposed was credit for time served.  See United States v. Reddick, at *20, (11 Cir., May 29, 2007)(noting that pursuant to USSG 4A1.1(b), 2 criminal history points may be imposed for each prior sentence of at least 60 days' imprisonment, and in case where a resisting without violence charge/conviction was not related to another conviction for marijuana possession, assignment of Criminal History points for both of those prior 2003 offenses/convictions was appropriate).

a defense of entrapment.

This claim is meritless for various reasons. First, where the Indictment for smaller quantities of cocaine (in Count 2) and for marijuana (in Count 3) stemmed from seizure of controlled substances inside Balbuena's home, upon a search made pursuant to issuance of a warrant, entrapment could not apply to those counts.

Insofar as Balbuena's conviction on Count 1 stemmed from a sting operation, the facts of record indicate that an entrapment offense could not have been successful. While an entrapment defense consists of two elements, the first of which is government inducement of the crime, the second element that must be proved is lack of predisposition on the part of the defendant. See United States v. Padron, 527 F.3d 1156, 1160 (11 Cir. 2008). For the first element, the government must do something more than mere suggestion of a crime or initiation of contact, United States v. Brown, 43 F.3d 618, 623 (11 Cir. 1995), rather, inducement "requires an element of persuasion or mild coercision," United States v. Ryan, 289 F.3d 1339, 1344 (11 Cir. 2002), and the government cannot be found responsible for inducing the defendant to engage in a criminal act unless it provides both the opportunity and something additional, such as coercion or excessive pressure, or manipulation of a non-criminal motive. For inducement, the defendant must produce evidence sufficient to show "that the government's conduct created a substantial risk that the offense would be commited y a persons other than one ready to commit it." Brown, supra, 43 F.3d at 623. Predisposition may be demonstrated if a defendant engaged in the illegal activity, although he had the opportunity not to do so. United States v. Ventura, 936 F.2d 1228, 1231-32 (11 Cir. 1991); United States v. Miller, 71 F.3d 813, 816 (11 Cir. 1996) (a predisposition finding is also supported by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so).

Here, the record indicates, as discussed above, that Balbuena was given an opportunity to back out of the transaction, but did not do so. Moreover, the fact that quantities of cocaine packaged for distribution [albeit less than 1 kilogram], thousands of baggies, and a scale and a press for forming kilogram bricks of cocaine were found in Balbuena's residence, in addition to over 700 grams of marijuana, indicates predisposition to engage in the larger volume cocaine transaction for which Balbuena was Indicted in Count 1 and to which he voluntarily plead guilty.

When assessing a lawyer's conduct, "[C]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler v. United States, 218 F.3d 1305 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001). The Eleventh Circuit will not "second-guess counsel's strategy." Chandler v. U.S., supra, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others -- whether or not he investigated those other defenses -- is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." Chandler, 218 F.3d at 1318 (quoting Strickland, 466 U.S. at 690-91). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11 Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, supra, 13 F.3d at 386.

In Balbuena's case, in light of the proffered evidence on

grounds 2 and 3 of the indictment, it was more than reasonable for counsel not to pursue a defense of entrapment on Count 1, and defense counsel was not ineffective for failing to do so. *Cf Stephens v. United States*, 14 F.Supp.2d 1322, 1331 (N.D.Ga., 1998)(counsel's decision not to pursue an entrapment defense was sound trial strategy)(quoting *Rogers v. Zant*, 13 F.3d 384, 386-87 (11 Cir. 1994) ("a decision not to investigate a potential defense, like other litigation decisions, need only be reasonable to fall within the range of professionally competent assistance").

**Ground 5**

In his last ground for relief (set out in his Memo at Cv:DE4, p.51) Balbuena argues that counsel was ineffective for not arguing that treatment he would receive when incarcerated as an alien prisoner, i.e. lack of access to rehabilitation programs, should warrant downward departure pursuant to 18 U.S.C. §3553(a). In support of this claim, Balbuena cites *Pepper v. United States*.[6]

Counsel did not seek downward departure based on the specific ground Movant Balbuena now raises in this §2255 proceeding. Counsel did, however, attempt to obtain for Balbuena a lower sentence, based on the separate argument about inconsistency of increasing his offense level for obstruction of justice and at the same time deny him acceptance of responsibility based on the same conduct.

Here, Balbuena cannot show counsel was ineffective for failing to attempt to minimize or obtain reduction of his sentence through a downward departure, for several reasons. First, the record shows that the Court at Balbuena's 10/22/08 hearing stated "I plan to sentence the defendant within the advisory guideline range," and indicated it was doing so because "I find that the guideline range in this case adequately reflect[s] the factors in 3553...".

---

[6]     That case is *Pepper v. United States*, __ U.S. __, 131 S.Ct. 1229 (2011).

(Sentencing, Cr:DE61, T/52). Thus, the court concluded that a within-the-guidelines sentence was necessary to address the Section 3553 factors in Balbuena's case, and this indicates that the court would not have been disposed to depart downward and impose a below-the-guidelines sentence.

In the framing of his 5th Ground for relief (<u>see</u> Memo at Cv:DE4, p.51), Balbuena refers to the Supreme Court's opinion in <u>Pepper v. United States</u>, <u>supra</u>. His reliance on the <u>Pepper</u> decision, however, is misplaced, as <u>Pepper</u> is inapposite to the facts of Balbuena's case. [In <u>Pepper v. United States</u>, __ U.S. __, 131 S.Ct. 1229, 1241 (2011), the Supreme Court held that "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range."].

Finally, other cases from this Circuit have held that collateral consequences that a defendant faces because he is a deportable alien generally do not support a downward departure. <u>See United States v. Lahoud</u>, No. 05-13316, 178 Fed.Appx. 926, 92, 2006 WL 1130807, at *1 (11 Cir., April 27, 2006); <u>United States v. Maung</u>, 320 F.3d 1305, 1308 (11 cir. 2003) (holding that a downward departure sentence could not properly be based on desire to shield defendant from immigration consequences of conviction, noting: "[n]o decision to which we have been directed, or that we have found, has upheld a downward departure based upon collateral consequences related directly or indirectly to the defendant's status as an alien"); <u>Estupinan v. United States</u>, Nos. 8:05-cr-240-T-24MSS, 8:06-cv-1866-T-24MSS, 2007 WL 778961, at *10 (M.D.Fla., March 9, 2007)(citing cases including <u>United States v. Restrepo</u>, 999 F.2d 640, 644-47 (2 Cir. 1993)(case in which district court, in order to support a downward departure, had relied on collateral

consequences stemming from defendant's status as an alien which included ineligibility for assignment to lower-security facilities, post imprisonment detention pending removal, and removal itself, and the Second Circuit found that those collateral consequences were insufficient to support a downward departure and reversed the downward departure on direct appeal).

It is apparent that the argument raised here by Movant Balbuena in his last ground for relief is one that would have had little or no chance of success if counsel had raised it by motion or objection during the penalty phase of Balbuena's case; and under the circumstances of Balbuena's case a decision not to pursue such an argument is clearly a strategic decision of the kind for which counsel cannot under the circumstances be deemed ineffective. Thus, on Ground 5, the Movant is entitled to no relief.

## IV    CONCLUSION

It is therefore recommended that: 1) **the Motion to Vacate pursuant to 28 U.S.C. §2255** filed by Angel Balbuena in this case **(CV:DE1)** as supplemented by his Memorandum (Cv:DE4), **be DENIED;** and 2) this case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: November 3rd 2011.

UNITED STATES MAGISTRATE JUDGE

cc:  Angel Balbuena, Pro Se
     Reg. No. 78754-004
     FCI - Big Spring
     Federal Correctional Institution
     Inmate Mail/Parcels
     1900 Simler Avenue
     Big Spring, TX 79720

     Karen Olivia-Marie Stewart, AUSA

28

Anne Ruth Schultz, AUSA
United States Attorney's Office
99 N.E. 4th Street
Miami, FL 33132